IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellant,*

*v.*

VIVEK A. PATEL, *Appellee.*

No. 1 CA-CR 18-0774
FILED 10-22-2019

Appeal from the Superior Court in Maricopa County
No. LC2018-000192-001
The Honorable Patricia A. Starr, Judge

**REVERSED; RESTITUTION ORDER REINSTATED IN FULL**

COUNSEL

Phoenix City Prosecutor's Office, Phoenix
By Jennifer Booth
*Counsel for Appellant*

Michael J. Dew Attorney at Law, Phoenix
By Michael J. Dew
*Counsel for Appellee*

Arizona Crime Victim Rights Law Group and
National Crime Victim Law Institute, Scottsdale
By Randall Udelman
*Counsel for Co-Amici Curiae*

## OPINION

Judge Lawrence F. Winthrop delivered the opinion of the Court, in which Presiding Judge Samuel A. Thumma and Judge Diane M. Johnsen joined.

**W I N T H R O P**, Judge:

¶1        The State appeals the superior court's judgment reversing the municipal court's restitution order of $61,191.99.  The State challenges the constitutionality of Arizona Revised Statutes ("A.R.S.") section 28-672(G) (2016), which capped criminal restitution for specified driving offenses at $10,000.[1]   For the following reasons, we hold that § 28-672(G) is unconstitutional, reverse the superior court's restitution order, vacate any resulting restitution judgment, and reinstate the municipal court's restitution order.

## FACTS AND PROCEDURAL HISTORY

¶2        In municipal court, Vivek Patel was convicted of violating A.R.S. § 28-672(A), which criminalizes moving violations that cause serious physical injury or death.  On behalf of the victim, the State requested restitution of $61,191.99 and argued the $10,000 restitution cap under A.R.S. § 28-672(G) was unconstitutional.  The municipal court agreed and ordered Patel to pay the amount the State requested.  Patel appealed the restitution order in superior court.  The superior court held the $10,000 cap constitutional and reversed the municipal court's order.  The State timely appealed the superior court's final judgment.[2]

---

[1]      The statute has since been amended to raise the restitution cap to $100,000.  *See* A.R.S. § 28-672(G) (2019).  We refer to the 2016 version of § 28-672(G) throughout this opinion.

[2]      Pursuant to A.R.S. § 12-1841(A)-(B), the city prosecutor on multiple occasions provided written notice and copies of relevant pleadings challenging the constitutionality of the subject statute to the Arizona Attorney General's office, the Speaker of the Arizona House of Representatives, and the President of the Arizona Senate.  This court also issued an order setting a briefing schedule in the event the Attorney

**ANALYSIS**

**¶3**          Because Patel's case began in municipal court, our jurisdiction is limited to reviewing the facial validity of the statute at issue, A.R.S. § 28-672(G).  *See* A.R.S. § 22-375(A); *State v. Russo*, 219 Ariz. 223, 225, ¶ 4 (App. 2008).  We review the constitutionality of a statute *de novo*.  *Russo*, 219 Ariz. at 225, ¶ 4.  We presume the statute is constitutional, and we will not declare a statute unconstitutional unless it conflicts with the federal or state constitution.  *Graville v. Dodge*, 195 Ariz. 119, 123, ¶ 17 (App. 1999).  The challenging party bears the burden to show a statute is unconstitutional.  *Id.*

**¶4**          Generally, Arizona statutes require a person convicted of a criminal offense to pay the victim the full amount of the victim's economic loss.  *See* A.R.S. § 13-603(C); *accord* A.R.S. § 13-804 ("Restitution for offense causing economic loss . . .").  However, A.R.S. § 28-672(G) limits restitution for victims of specified criminal driving offenses to $10,000.  This subsection was enacted in 2006 when the legislature created the crime of causing serious physical injury or death by a moving violation; before that time, a moving violation constituted only a civil violation.  *See* Amended Senate Fact Sheet, H.B. 2208, 47th Leg., 2d Reg. Sess. (Mar. 27, 2006).  Criminalizing these offenses resulted in a right to a restitution award in favor of the victim of such offenses; however, the legislation capped restitution at $10,000.  *Id.*[3]

**¶5**          Arizona voters amended our state constitution in 1990 to add the Victims' Bill of Rights ("VBR").  *See* Ariz. Const. art. 2, § 2.1 (approved by election Nov. 6, 1990); *State v. Roscoe*, 185 Ariz. 68, 70 (1996).  The VBR enshrines a victim's right to seek "prompt restitution from the person or persons convicted of the criminal conduct that caused the victim's loss or injury."  Ariz. Const. art. 2, § 2.1(A)(8).  The State argues this provision constitutionally ensures a victim's right to a restitution award for full economic loss.  Patel contends that nothing in the VBR prohibits a statutory cap on restitution.  He argues that the VBR only ensures a victim "prompt"

---

General's Office, the Speaker, or the President chose to file a written brief. Despite those notices, no legal representative of the Attorney General, the House, or the Senate has filed a written brief or otherwise appeared to support the superior court's ruling upholding the constitutionality of the statute.

[3]          Similar driving statutes in Title 28 contain provisions authorizing restitution awards without caps.  *See, e.g.*, A.R.S. §§ 28-675(D) (for causing death by use of a vehicle); -676(D) (for causing serious physical injury by use of a vehicle).

restitution, and that if the electorate intended to provide "full" restitution to victims, it would have said so.

¶6        When interpreting the VBR, our primary goal is to effectuate the electorate's intent. *See McGuire v. Lee*, 239 Ariz. 384, 387, ¶ 10 (App. 2016) (citation omitted). The best indication of that intent is found in the provision's plain language. *Id.* If the language is clear and unambiguous, we only apply its plain meaning. *Id.*

¶7        Our analysis begins with the meaning of "restitution." The VBR does not define restitution. *See* Ariz. Const. art. 2, § 2.1. The general criminal restitution statute, § 13-603(C), however, has been part of our criminal code in various forms since 1977. *See State v. Wilson*, 150 Ariz. 602, 605 (App. 1986); s*ee also State v. Moore*, 156 Ariz. 566, 568 (1988) (noting that "[r]estitution, both as reparation to the victim and as part of the rehabilitation of the offender, has been a part of the criminal justice system for a long time."); *State v. Howard*, 163 Ariz. 47, 51 (App. 1989) (explaining "restitution is to make the victim whole"). In 1984, § 13-603(C) was amended to require restitution "in the full amount of the economic loss as determined by the court." *State v. Currie*, 150 Ariz. 59, 61 (App. 1986) ("[T]he court was correct in ordering the defendant to pay the full amount of the economic loss because that is what is required by the specific language of A.R.S. § 13-603(C).").

¶8        As with legislative enactments, we presume the voters who approved the VBR in 1990 were well aware of the statutes authorizing restitution and the existing Arizona case law interpreting victims' rights to restitution. *See Daou v. Harris*, 139 Ariz. 353, 357 (1984) ("[W]e presume that the legislature, when it passes a statute, knows the existing laws."). As such, we further presume that had the voters wished to restrict or otherwise distinguish rights to restitution under the VBR from those under existing criminal statutes, such as § 13-603(C), they would have done so. *McCandless v. United S. Assurance Co.*, 191 Ariz. 167, 174 (App. 1997) ("[I]f the legislature, in adding to a statutory scheme, does *not* amend an existing statute which would impact on the addition, we must presume the legislature intended the existing statute to impact the addition."). Accordingly, we hold the plain language of the VBR implicates the full restoration of a victim's economic loss.

¶9        Our interpretation is consistent with Arizona VBR jurisprudence. *See Town of Gilbert Prosecutor's Office v. Downie ex rel. Cty. of Maricopa*, 218 Ariz. 466, 468, ¶ 7 (2008) ("The [VBR] gives victims the right to prompt restitution for *any* loss they incur as a result of a crime.")

(emphasis added); *State v. Freeman*, 174 Ariz. 303, 306 (App. 1993) (finding that one objective of restitution is to make the victim whole); *see also State ex rel. Thomas v. Klein*, 214 Ariz. 205, 207, ¶ 7 (App. 2007) (stating that one purpose of the VBR was to provide rights to *all* victims). Patel's argument that the VBR only guarantees partial restitution as provided in § 28-672(G) would mean that a class of victims who suffered severe harm would not be entitled to restitution. Based on a plain reading of the Arizona Constitution and the authorities cited above, we reject this argument.

**¶10** Relevant secondary sources, including dictionaries and ballot materials, support our conclusion. *See Ruiz v. Hull*, 191 Ariz. 441, 450, ¶ 36 (1998) (permitting consideration of ballot materials when interpreting an initiative); *Piccioli v. City of Phoenix*, 246 Ariz. 371, 375, ¶ 12 (App. 2019) ("[Courts] may look to dictionaries to ascertain and apply a word's plain meaning unless the context suggests the electorate intended a different meaning.").

**¶11** As commonly defined, "the ordinary meaning of 'restitution' is restoring someone to a position he [or she] occupied before a particular event." *Hughey v. United States*, 495 U.S. 411, 416 (1990) (citing Webster's Third New International Dictionary (1986) and Black's Law Dictionary (5th ed. 1979)); *accord* Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. e(2) (2011) ("Another context in which the word 'restitution' means something closer to damages is a product of statutes authorizing compensation to victims as a part of criminal sentencing."). Considering these definitions, the relevant VBR provision ensures victims of criminal offenses the right to seek a restitution judgment that, if collected, will restore them to their economic status before the crime. The amount of compensation required to do that necessarily will vary depending on the crime and the resulting economic harm. Yet under A.R.S. § 28-672(A), regardless of the amount of economic harm victims of such crimes suffer, they may not obtain a restitution order of more than $10,000. A.R.S. § 28-672(G).

**¶12** The ballot materials circulated in connection with the VBR also support our interpretation of restitution in the constitutional amendment. The voter pamphlet published by the Arizona Secretary of State explained that the VBR "would require the defendant to pay the victim for any harm caused to the victim. This requirement acknowledges that the victim has been harmed and should be compensated for that harm." Ariz. Sec'y of State, 1990 Publicity Pamphlet 35 (1990), https://azsos.gov/sites/default/files/pubpam90.pdf. Given the

reference to payment for "any harm," we find it implausible that the electorate intended to only guarantee a victim partial restitution.

¶13        Patel argues, however, that the statutory cap is a constitutional exercise of legislative power under Article 2, Section 2.1(D) of the VBR.  Under that section, "[t]he legislature . . . [has] the authority to enact substantive and procedural laws to define, implement, preserve and protect the rights guaranteed to victims."  Ariz. Const. art. 2, § 2.1(D).  But Patel has not shown how imposing a cap on restitution awards is a proper legislative effort "to define, implement, preserve and protect" victims' constitutional rights to seek restitution.  Nor does such a cap in any way advance victims' rights to restitution.  *See State v. Hansen*, 215 Ariz. 287, 291, ¶ 17 (2007).  For these reasons, it is not a permissible exercise of legislative authority under Article 2, Section 2.1(D) of the VBR.[4]

¶14        Patel also argues that recognizing a right to full restitution under the VBR would effectively deny a criminal defendant the constitutional right to have a civil jury hear the victim's claim for damages resulting from the offense.  We disagree.  A victim's right to full restitution is still confined to economic loss.  *See* A.R.S. § 13-603(C).  The statutory definition of economic loss, which is not challenged here, is "any loss incurred by a person as a result of the commission of an offense . . . [including] lost interest, lost earnings and other losses that would not have been incurred but for the offense."  A.R.S. § 13-105(16).  Restitution does not apply to losses incurred by the convicted person, damages for pain and suffering, punitive damages, or consequential damages.  *See* A.R.S. § 13-603(C); A.R.S. § 13-105(16).  Further, restitution is restricted to economic loss that directly flows from a defendant's criminal conduct.  *See State v. Wilkinson*, 202 Ariz. 27, 29, ¶ 11 (2002).  Victims may still seek remedies for other incurred losses, damage, or injuries through separate civil proceedings, where defendants may avail themselves of their right to a jury trial and raise defenses such as comparative negligence or assumption of risk.  *See* Ariz. Const. art. 2, § 23.

---

[4]        Accordingly, the statutory cap in this case is in contrast to case-specific, court-imposed procedures addressing restitution, such as deadlines for restitution claims and restitution limits in written plea agreements.

**CONCLUSION**

**¶15**      Based on the forgoing, we conclude the right to restitution guaranteed in the Victims' Bill of Rights in the Arizona Constitution equally applies to victims injured or killed by a defendant who is convicted of violating A.R.S. § 28-672(A).  As such, A.R.S. § 28-672(G), which purports to cap restitution resulting from such a crime, violates the Arizona Constitution.  *See* Ariz. Const. art. 2, § 2.1(A).  For these reasons, we reverse the superior court's restitution order, vacate any resulting restitution judgment, and reinstate the municipal court's restitution order of $61,191.99.



AMY M. WOOD • Clerk of the Court
FILED:  AA