IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**STATE OF ARIZONA,**
*Appellant,*

*v.*

**VIVEK A. PATEL,**
*Appellee.*

---

No. CR-19-0366-PR
**May 4, 2021**

---

Appeal from the Superior Court in Maricopa County
The Honorable Patricia A. Starr, Judge
No. LC2018-000192-001
**REVERSED; RESTITUTION ORDER REINSTATED**

Opinion of the Court of Appeals, Division One
247 Ariz. 482 (2019)
**AFFIRMED**

---

COUNSEL:

Phoenix City Prosecutor's Office, Jennifer Booth, Amy Offenberg (argued), Assistant Phoenix City Prosecutors, Phoenix, Attorneys for State of Arizona

Michael J. Dew (argued), Michael J. Dew, Attorney at Law, Phoenix, Attorney for Vivek A. Patel

Sabrina Ayers Fisher, Maricopa County Public Advocate, Phoenix; Sherri McGuire Lawson, Maricopa County Legal Defender, Jennifer A. Ceppetelli (argued), Deputy Legal Defender, Phoenix; and David J. Euchner, Pima County Public Defender's Office, Tucson, Attorneys for Amici Curiae Maricopa County Public Advocate, Maricopa County Legal Defender, and Arizona Attorneys for Criminal Justice

Mark Brnovich, Arizona Attorney General, Brunn (Beau) W. Roysden III, Solicitor General, Michael T. O'Toole, Chief Counsel, Criminal Appeals Section, Linley Wilson, Deputy Solicitor General, Katherine Jessen, Assistant Attorney General, Phoenix, Attorneys for Amicus Curiae Arizona Attorney General's Office

Randall Udelman, Arizona Crime Victim Rights Law Group, Scottsdale, Attorney for Amici Curiae Arizona Crime Victim Rights Law Group and National Crime Victim Law Institute

———————————

JUSTICE MONTGOMERY authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER and JUSTICES BOLICK, LOPEZ, and BEENE joined.[*]

———————————

JUSTICE MONTGOMERY, opinion of the Court:

¶1 This matter involves a conflict between constitutional and statutory provisions concerning a crime victim's right to restitution. The Victims' Bill of Rights ("VBR") guarantees a victim's right to receive prompt restitution for loss or injury caused by a defendant's criminal conduct. Ariz. Const. art. 2, § 2.1(A)(8). The VBR also authorizes the legislature to enact laws "to define, implement, preserve and protect the rights guaranteed to victims." Ariz. Const. art. 2, § 2.1(D). We must determine whether A.R.S. § 28-672(G), which limits the amount of restitution that can be awarded to a victim for loss resulting from a violation of specified traffic offenses, is either an unconstitutional limitation on the right to receive restitution or a valid legislative enactment.

¶2 We hold today that the constitutional right to receive restitution guaranteed by the VBR is a right to receive the full amount of economic loss or injury caused by a defendant's criminal conduct.

---

[*] Although Justice Andrew W. Gould (ret.) participated in the oral argument in this case, he retired before issuance of this opinion and did not take part in its drafting.

Accordingly, § 28-672(G)'s limitation on a restitution award is unconstitutional and void.

**I.**

**¶3**        A driver who violated § 28-672 before 2006 was only responsible for a civil penalty. § 28-672 (2005). As such, rights guaranteed by the VBR did not apply. Ariz. Const. art. 2, § 2.1 (C) ("'Victim' means a person against whom the *criminal* offense has been committed . . . ." (emphasis added)). But the legislature amended § 28-672 in 2006 and reclassified a violation of the statute as a criminal offense. H.B. 2208, 47th Leg., 2nd Reg Sess. (Ariz. 2006). Specifically, a driver commits a misdemeanor if they violate any of the enumerated traffic statutes that then results in death or serious physical injury.[1] Additionally, the amendment added § 28-672(G), which provided that "[r]estitution awarded pursuant to section 13–603 as a result of a violation of this section shall not exceed [$10,000]."[2] *Id.*

**¶4**        In June 2017, the Phoenix Municipal Court found Vivek Patel guilty of violating § 28-672 for causing serious physical injuries to the victim resulting from a failure to yield while turning left. § 28-672(A)(4). The victim established that his injuries and expenses amounted to $161,191.99. Because Patel's insurer had already paid $100,000, the amount of restitution for the court to consider was $61,191.99.

**¶5**        Patel argued that the court could order no more than $10,000 in restitution due to § 28-672(G). The State countered that the limitation

---

[1] The enumerated statutes in 2017 set forth at subsection (A) consisted of: (1) § 28-645(A)(3)(a), obeying a red light; (2) § 28-729, proper travel within a lane; (3) § 28-771, yielding at an intersection; (4) § 28-772, yielding while turning left; (5) § 28-773, obeying stop sign at an intersection; (6) § 28-792, yielding right-of-way at crosswalk; (7) § 28-794, exercising due care; (8) § 28-797(F), (G), (H), or (I), complying with school crosswalk restrictions; (9) § 28-855(B), obeying where to stop at stop sign; and, (10) § 28-857(A), encountering stopped school bus. § 28-672 (2017).

[2] The legislature increased the amount of restitution that a court may order to $100,000 in 2018. H.B. 2522, 53rd Leg., 2nd Reg. Sess. (Ariz. 2018). This increase does not affect our analysis or disposition.

was facially unconstitutional because it conflicted with a victim's right to receive restitution under § 2.1(A)(8) of the Arizona Constitution. The municipal court agreed with the State and ordered Patel to pay $61,191.99.

¶6　　　　The superior court reversed the municipal court's order. The court reasoned that, absent the words "full," "complete," "for all losses," or "with no limit" in the text of the VBR, the constitution did not guarantee the right to "full and complete restitution." Therefore, limiting an award of restitution was a valid policy decision by the legislature. The court also addressed the conflict between A.R.S. § 13-603(C), which requires a court to award restitution in the full amount of a victim's economic loss, and the limitation on restitution in § 28-672(G). The court concluded that the specific language addressing restitution in § 28-672, the statute Patel was convicted of violating, controlled over the more general language regarding restitution in § 13-603.

¶7　　　　The court of appeals reversed the superior court and reinstated the restitution order of $61,191.99. It held that the common understanding of "restitution," along with the plain language of the VBR and related jurisprudence, necessarily guaranteed victims an award of restitution for the full amount of their economic loss. The court further concluded that § 28-672(G)'s limitation on restitution does not "in any way advance victims' rights to restitution" and thus is not a permissible exercise of the legislature's authority under § 2.1(D) of the VBR.

¶8　　　　We accepted review because whether the legislature can limit a restitution award subject to the VBR is a recurring issue of statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-2103.

## II.

¶9　　　　Patel argues that the plain language of § 2.1(A)(8) does not require "full" restitution, and that the legislature has authority pursuant to § 2.1(D) to limit the amount of restitution that can be awarded. The State counters that the plain language of the VBR guarantees a right to full restitution and is what the voters who approved it intended.

¶10　　　　We review matters of constitutional and statutory interpretation de novo. *Johnson Utilities, L.L.C. v. Ariz. Corp. Comm'n*, 249

Ariz. 215, 219 ¶ 11 (2020). When interpreting the VBR, we "follow and apply the plain language of this . . . amendment to our constitution." *Knapp v. Martone*, 170 Ariz. 237, 239 (1992).

**A.**

**¶11**        The VBR "preserve[s] and protect[s] victims' rights to justice and due process." Ariz. Const. art. 2, § 2.1. This includes guaranteeing the "right . . . [t]o receive prompt restitution from the person or persons convicted of the criminal conduct that caused the victim's loss or injury." Ariz. Const. art. 2, § 2.1(A)(8).

**¶12**        Patel, focusing on "prompt" in the phrase "prompt restitution," argues that § 2.1(A)(8) does not require "full" restitution because "[n]o torture of the English language could possibly transform the word 'prompt' into that of 'full' or 'unlimited.'" We agree that "prompt" does not mean "full." "Prompt" means "[b]eing on time; punctual; [c]arried out or performed without delay: a prompt reply." *Prompt*, The American Heritage Dictionary, https://www.ahdictionary.com (last visited May 3, 2021). "Prompt" in § 2.1(A)(8) is thus an attributive adjective that modifies restitution temporally. *See* Bryan A. Garner, *The Chicago Guide to Grammar, Usage, and Punctuation*, § 94, at 58 (2016). Any conclusion that the *amount* of restitution a victim may receive based on what "prompt" means is a non sequitur. Whether § 2.1(A)(8) guarantees full restitution depends on the meaning of "restitution."

**¶13**        The VBR does not define "restitution." *State v. Patel*, 247 Ariz. 482, 483 ¶ 7 (App. 2019). Nonetheless, by "follow[ing] and apply[ing] the plain language of [the VBR]," *Knapp*, 170 Ariz. at 239, we agree with the court of appeals that "the ordinary meaning of 'restitution' is restoring someone to a position he [or she] occupied before a particular event." *Patel*, 247 Ariz. at 484 ¶ 11 (first quoting *Hughey v. United States*, 495 U.S. 411, 416 (1990) (first citing Webster's Third New International Dictionary (1986); and then citing Black's Law Dictionary (5th ed. 1979)); and then quoting Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. e(2) (2011) ("Another context in which the word 'restitution' means something closer to damages is a product of statutes authorizing compensation to victims as a part of criminal sentencing.")).

**¶14**        The right to restitution is thus a right to the full amount required to restore victims to the position they were in before the loss or injury caused by the criminal conduct.  As the court of appeals further noted, *id.* at ¶ 9, this conclusion comports with our caselaw as exemplified by *Town of Gilbert Prosecutor's Office v. Downie ex rel. County of Maricopa*: "[t]he [VBR] gives victims the right to prompt restitution for *any loss they incur* as a result of a crime," and "Arizona's criminal code implements this constitutional guarantee by requiring 'the convicted person to make restitution to . . . the victim of the crime . . . *in the full amount* of the [victim's] economic loss.'"  218 Ariz. 466, 468 ¶ 7 (2008) (emphasis added) (citations omitted).

**¶15**        The scope of restitution afforded to victims when the VBR was considered supports this conclusion.  At the time voters approved the VBR, victims were clearly entitled to full restitution.  A.R.S. § 13-603(C) (providing that "the court shall require the convicted person to make restitution . . . in the full amount of the economic loss as determined by the court").  And just as we presume that the legislature is aware of the law when it enacts a statute, *Daou v. Harris*, 139 Ariz. 353, 357 (1984), we presume voters are as well.  *Cf.  State ex rel. Thomas v. Klein*, 214 Ariz. 205, 208 ¶ 10 (App. 2007) (noting statutory definitions of criminal offenses at time VBR enacted to determine scope of right in question and assess validity of legislative enactment).

**¶16**        Arguments and analysis related to the VBR in the publicity pamphlet also support the conclusion that voters sought to guarantee a right to full restitution.  Arguments supporting passage spoke of the need for a constitutional right to restitution while arguments in opposition specifically noted that statutes already guaranteed that right.  Ariz. Sec'y of State, 1990 Publicity Pamphlet 35–42 (1990), https://azsos.gov/sites/default/files/pubpam90.pdf. Legislative analysis noted that the VBR would guarantee a right to "receive restitution" and that the VBR "would require the defendant to pay the victim for any harm caused to the victim.  This requirement acknowledges that the victim has been harmed and should be compensated for that harm."  *Id.* at 35.

**¶17**        Quoting this same language, the court of appeals concluded that "[g]iven the reference to payment for 'any harm,' we find it implausible that the electorate intended to only guarantee a victim partial restitution." *Patel*, 247 Ariz. at 485 ¶ 12.  So do we, and given that the text in question

does not limit the amount of restitution, we will not "restrict the guarantee by adding words of limitation 'contrary to the plain language used.'" *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 9, 13 (1986) (refusing to limit the constitutional right to recover for damages enshrined in Article 18, section 6 of the Arizona Constitution (quoting *Kilpatrick v. Superior Court*, 105 Ariz. 413, 419–20 (1970)). The VBR guarantees *full* restitution for crime victims. *Patel*, 247 Ariz. at 485 ¶ 12.

¶18 Patel, however, asserts that such an interpretation rewrites the VBR to state that victims have an "unlimited" right to restitution, unhampered by any statutory directive. We disagree. While the amount of compensation will vary depending on the crime and resulting harm, *id.* at 484 ¶ 11, the loss for which restitution can be awarded is not without limit. Section 2.1(A)(8) limits restitution to loss or injury caused by a defendant's criminal conduct. The particular nature of the loss in question is further clarified in statute and our case law. Pursuant to A.R.S. § 13-105(16), "[e]conomic loss includes lost interest, lost earnings and other losses that would not have been incurred but for the offense. Economic loss does not include losses incurred by the convicted person, damages for pain and suffering, punitive damages or consequential damages." And as this Court explained in *State v. Wilkinson*, "the loss must be one that the victim would not have incurred but for the defendant's criminal offense," and "the criminal conduct must directly cause the economic loss." 202 Ariz. 27, 29 ¶ 7 (2002); *see also Town of Gilbert Prosecutor's Office*, 218 Ariz. at 469 ¶ 13 (stating that "[r]estitution . . . should not compensate victims for more than their actual loss"); *State v. Guadagni*, 218 Ariz. 1, 5 ¶ 14 (App. 2008) (reasoning that for restitution to be awarded, there has to be a crime "committed *against* someone").

¶19 Furthermore, a hearing to determine the amount of restitution a victim is entitled to is not a free-for-all. In such proceedings, "[t]he State has the burden to prove a restitution claim by a preponderance of the evidence,"[3] and a court must protect the due process rights of a defendant. *State v. Quijada*, 246 Ariz. 356, 364 ¶¶ 22, 24 (App. 2019). As for concerns

---

[3] A victim also has "the right to present evidence or information and to make an argument to the court, personally or through counsel, at any proceeding to determine the amount of restitution pursuant to § 13-804." A.R.S. § 13-4437(E).

raised by Patel and amici regarding a conflict between a restitution hearing and the right to a civil trial, we have previously observed that the statutory framework for imposing restitution "prevents the restitution statutes from conflicting with the right to a civil jury trial preserved by Arizona Constitution Article II, Section 23." *Wilkinson*, 202 Ariz. at 29 ¶ 11. Nothing in the case before us calls that conclusion into question.

**B.**

**¶20**      Patel additionally asserts that the limitation on awarding restitution in § 28-672(G) is a valid exercise of the legislature's authority to "enact substantive and procedural laws to define, implement, preserve and protect the rights guaranteed to victims by [the VBR]." Ariz. Const. art. 2, § 2.1(D). We find his argument unpersuasive.

**¶21**      *State v. Hansen*, 215 Ariz. 287 (2007), provides an example of a valid exercise of legislative authority regarding restitution pursuant to § 2.1(D). In *Hansen*, this Court addressed a conflict between A.R.S. § 13-804(D) and Arizona Rule of Criminal Procedure 31.6. 215 Ariz. at 289 ¶ 8. The legislature directed that "[r]estitution payments . . . shall not be stayed if the defendant files a notice of appeal," whereas Rule 31.6 provided that "[a] sentence to pay a fine or restitution shall be stayed pending appeal." *Id.* at 288 ¶ 1. This Court upheld the provision in § 13–804(D) as a valid exercise of authority pursuant to § 2.1(D) based, in part, on the reality that "the statute enhances the likelihood that victims of crime will receive prompt restitution," and therefore "the statute advances victims' rights." *Id.* at 291 ¶ 16. In contrast, § 28-672(G) not only fails to enhance the likelihood that victims will receive prompt restitution, it precludes any recovery of restitution to victims who suffer loss or injury in excess of $10,000. Section 28-672(G) is not a valid exercise of the authority granted by § 2.1(D).

**C.**

**¶22**      Patel further argues that if we find the limitation on restitution in § 28-672 is not a valid exercise of legislative authority, then similar limitations in A.R.S. §§ 13-809(B) and 8-344 are likewise invalid. We disagree that such a Hobson's choice is before us and address each statute in turn.

**1.**

¶**23**　　　　Section 13-809(B) directs that § 13-804, which specifies the way a trial court determines and orders restitution, "does not apply to traffic offenses, except for a violation of § 28-661, 28-662, 28-693, 28-1381, 28-1382 or 28-1383."[4]　According to Patel, the failure to include § 28-672 among the list of criminal traffic statutes evinces a legislative intent to exclude § 28-672 from traffic offenses for which full restitution can be awarded.　If that were true, then we would have to draw the same conclusion that A.R.S. §§ 28-675 and -676, felony statutes enacted at the same time as § 28-672, *see infra* ¶ 30, are also excluded from the requirement to impose full restitution.　We decline to adopt Patel's reasoning.　*State v. Green*, 248 Ariz. 133, 135 ¶ 8 (2020) ("When the plain text of a statute is clear and unambiguous, it controls unless an absurdity or constitutional violation results." (citation omitted) (internal quotation marks omitted)); *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 719 (1991) (Scalia, J., dissenting) (discussing "the hoary canon of construction, *expressio unius est exclusio alterius*" and citing *Burns v. United States*, 501 U.S. 129, 136–38 (1991), *abrogated by Dillon v. United States*, 560 U.S. 817 (2010) (stating that invocation of *expressio unius* inappropriate where it would lead to absurd and arguably unconstitutional results)).　Instead, we read the list of statutes set forth as exemplifying the category of traffic offenses—criminal traffic offenses—to which § 13-804 does apply.

¶**24**　　　　This reading of § 13-809(B) ensures that civil traffic offenses remain categorically excluded from an award of restitution, which "both fulfills legislative intent and furthers legislative goals." *Est. of Hernandez by Hernandez-Wheeler ex rel. Hernandez v. Ariz. Bd. of Regents*, 177 Ariz. 244, 249 (1994).　As noted below, *infra* ¶¶ 30, 33–35, the legislature considered creating a statutory right to restitution for civil traffic offenses but declined to do so.　This construction also permits § 13-809 to be read in harmony with §§ 13-603(C) and -804 for the purpose of awarding restitution consistent with the VBR.　*Est. of Hernandez by Hernandez-Wheeler ex rel. Hernandez*, 177

---

[4] The listed offenses are criminal statutes penalizing the failure to stop and remain at the scene of an accident involving an injury or death, § 28-661; failing to stop or remain at the scene of an accident involving damage to a vehicle, § 28-662; reckless driving, § 28-693; and, offenses involving driving under the influence, §§ 28-1381, -1382, and -1383.

Ariz. at 249 (stating that "whenever possible, this [C]ourt interprets . . . apparently conflicting statutes in a way that harmonizes them and gives rational meaning to [all]"). Therefore, there is no basis to hold § 13-809(B) unconstitutional.

**2.**

**¶25** The same is true for Patel's argument that § 8-344, which requires a court to "order the juvenile to make full or partial restitution to the victim of the offense for which the juvenile was adjudicated delinquent," is a valid legislative limit on restitution in juvenile cases. While making much of the "partial restitution" portion of the statute, Patel overlooks additional language in § 8-344(C). Subsection (C) permits a court to "order one or both of the juvenile's custodial parents to make restitution to the victim of the offense for which the juvenile was adjudicated delinquent." In such an instance, subsection (C) further states that a court "shall order the juvenile to make either full or partial restitution, regardless of the juvenile's insufficient earning capacity." Therefore, § 8-344, unlike § 28-672(G), does not limit a court from awarding a victim the full amount of restitution they have a right to receive, and we will not read § 8-344 to say otherwise.[5] Accordingly, there is no basis to hold § 8-344 unconstitutional.

**¶26** "[T]here can be only one choice when a statute conflicts with the constitution. 'The constitution of this state, second only to the constitution of the United States, is the supreme law of Arizona. Any act of the legislature . . . which contravenes its provisions must fall.'" *W. Devcor, Inc. v. City of Scottsdale*, 168 Ariz. 426, 430–31 (1991) (quoting *Miller v. Heller*, 68 Ariz. 352, 357 (1949)); *see also State v. Lamberton*, 183 Ariz. 47, 50 (1995) (stating that "the implementing statutes and [court] rules cannot eliminate or narrow rights guaranteed by the state constitution"); *State v. Roscoe*, 185 Ariz. 68, 72 (1996) (finding legislative amendment to A.R.S. § 13-4433 unconstitutional because it "interferes with rights provided by the Arizona Constitution" and stating that the legislature may not restrict rights created

---

[5] Section 8-344(C) does include a limit as to how much restitution one or both custodial parents can be ordered to pay pursuant to A.R.S. § 12-661, which is $10,000. However, § 12-661 does not function as a limitation on the total amount of restitution that can be ordered pursuant to § 8-344, so we are not faced with the same limitation issue presented by § 28-672(G).

by the people); *Klein*, 214 Ariz. at 209 ¶ 15 (invalidating a legislative act redefining criminal offenses that narrowed class of victims eligible to assert rights under the VBR and declaring that "[t]he purpose of the Implementation Act was to allow the Legislature to address all of the procedural and substantive issues that might accompany the enactment of the Victims' Bill of Rights, not to restrict its application by adopting a limited definition of criminal offense diminishing the application of the [VBR]."). We therefore hold § 28-672(G) is an unconstitutional limitation of a crime victim's right to receive prompt restitution and is thus void. *Marquez v. Rapid Harvest Co.*, 1 Ariz. App. 562, 565 (1965) ("It is our absolute duty to protect constitutional rights." (citing *Bristor v. Cheatham*, 75 Ariz. 227, 234 (1953)).

## III.

**¶27** Having found that § 28-672(G) is unconstitutional, we must determine whether it can be severed from the remainder of the statute. Patel and amici assert that subsection (G) is integral to the legislature's amendments to § 28-672 in 2006, and that the legislature's efforts to amend the subsection in 2018 support this conclusion. In contrast, the State argues that subsection (G) can be severed. First, the State notes that absent subsection (G), the remaining provisions of § 28-672 are fully operative. Second, the State concludes that the legislative history does not provide an indication of the type of connection between the criminal provisions of § 28-672 and the restitution limitation that would render subsection (G) unseverable.

**¶28** Our determination of whether subsection (G) can be severed from § 28-672 consists of two inquiries. First, we consider whether the remaining valid provisions "are effective and enforceable standing alone and independent of those portions declared unconstitutional." *State Comp. Fund v. Symington*, 174 Ariz. 188, 195 (1993) (quoting *State v. Prentiss*, 163 Ariz. 81, 86 (1989)). Second, we consider whether "the valid and invalid portions are . . . so intimately connected as to raise the presumption the legislature would not have enacted one without the other, and [whether] the invalid portion was . . . the inducement of the act." *Id.* (quoting *Prentiss*, 163 Ariz. at 86). Our conclusion ultimately rests on our "ability to determine the intent of the lawmakers who enacted the statute . . . in order to give full effect to their intent." *Benjamin v. Ariz. Dep't of Rev.*, 163 Ariz. 182, 183 (App. 1989).

**¶29** With respect to the first inquiry, the remaining valid provisions of § 28-672 are fully effective and enforceable without subsection (G). The remaining subsections either define the various ways the statute can be violated, (A), (J); list the penalty or penalties to be imposed, (B), (C), (D), (E), (I); permit dismissal of the prosecution if the victim "acknowledges receipt of satisfaction for the injury," (F)[6]; or establish the time within which a prosecution must commence, (H). None refer to or are specifically referenced by subsection (G).

**¶30** As for the second inquiry, which focuses on the relationship between the criminal subsections of § 28-672 and subsection (G), there is nothing in the legislative history that indicates such an intimate connection to suggest they would not have been enacted separately or that one was the inducement for the other. As amended in the House, H.B. 2208 created two new felony statutes, §§ 28-675 and -676, and amended § 28-672. H. Floor Amend. to H.B. 2208, 47th Leg., 2d Reg. Sess. (Mar. 1, 2006). The statutes provided for penalties where a driver violated one of several listed traffic statutes resulting in death or serious physical injury, respectively, and was not authorized to drive. *Id.* An additional amendment by the Senate Judiciary Committee added two new restitution statutes, A.R.S. §§ 28-677 and -678, which created a statutory right to restitution for economic loss where a person was found responsible for any *civil* traffic violation resulting in serious physical injury or death. Comm. on Judiciary, S. Amend. to H.B. 2208, 47th Leg., 2d Reg. Sess. (Mar. 21, 2006).

**¶31** Legislative materials accompanying the bill underscored the motivation for and goal of the legislation. The House Bill Summary for H.B. 2208, as passed by the House, noted that, § 28-672, only provided for an "enhanced civil penalty" for the conduct under review. Ariz. State H. B. Summary for H.B. 2208 47th Leg., 2d Reg. Sess. (Mar. 6, 2006). In contrast, the proposed statutes "establish[] vehicular homicide as a class 4 felony and vehicular assault as a class 5 felony." *Id.*

---

[6] Patel referenced § 28-672(F) at oral argument in support of his conclusion that subsection (G) cannot be severed because restitution is an integral part of the statute. However, if the victim has been made whole for his or her injury or loss, which subsection (F) necessarily entails, then there is no restitution to be ordered under subsection (G) regardless of the amount in question.

¶**32** The Senate Fact Sheet for H.B. 2208 provided extensive background on non-motorist fatalities in traffic accidents with detailed statistics illustrating the problem. Ariz. State S. Fact Sheet for H.B. 2208 47th Leg., 2d Reg. Sess. (Mar. 16, 2006) (noting further that "Arizona [was] one of four states without a vehicle-specific homicide statute"). In particular, the Fact Sheet compared Arizona to the rest of the country with respect to the average number of traffic fatalities per 100,000 persons, the percentage of intersection fatalities comprising the total number of traffic fatalities, and the percentage of non-motorists killed in traffic accidents comprising the total number of traffic fatalities. *Id.* Arizona's numbers did not fare well in the comparison.

¶**33** The only discussion concerning restitution occurred between the bill's sponsor, Representative Andy Biggs, and a member of the Senate Judiciary Committee, Senator William Brotherton, while addressing the civil restitution statutes in the amendment before the Committee. *Hearing on H.B. 2208 Before the S. Comm. on Judiciary*, 47th Leg., 2d Reg. Sess. (Ariz. 2006) (statement of Rep. Andy Biggs, Member, H. Comm. on Transp.). Senator Brotherton highlighted differences between a civil traffic hearing and a criminal case and noted that, unlike in a criminal case, a person appearing at a civil traffic hearing is not entitled to counsel and the matter is presented by a police officer. *Id.* (statement of Sen. William Brotherton, Member, S. Comm. on Judiciary). Senator Brotherton further expressed concern about the amount of restitution that could be ordered arising from a traffic accident and that the amendment pending before the Judiciary Committee also required reimbursement to an insurance company for amounts paid to an injured person. *Id.*

¶**34** Rep. Biggs expressed a willingness to see a floor amendment eliminate the requirement to reimburse an insurance company and establish a cap on the amount of restitution that could be awarded. *Id.* (statement of Rep. Andy Biggs, Member, H. Comm. on Transportation). There was no concern expressed with respect to awarding restitution as a result of violating either proposed criminal statute.

¶**35** Thereafter, a Senate floor amendment to H.B. 2208 deleted the proposed civil restitution statutes and created new provisions within § 28-672. Sen. Floor Amend. to H.B. 2208, 47th Leg., 2d Reg. Sess. (May 12, 2006). The amendment created subsection (G) with the language limiting restitution and created a misdemeanor analogue in § 28-672 to §§ 28-675

and -676.[7] *Id.* Specifically, the amendment made it a class 3 misdemeanor to violate the exact same list of traffic statutes resulting in death or serious physical injury as listed in the felony statutes, minus the provisions addressing the lack of the authorization to drive. *Id.*

**¶36** We cannot presume from this history that the criminal provisions of § 28-672 would not have been enacted without the restitution limitation or that it was the restitution limitation that induced the enactment of the criminal provisions. While both were enacted at the same time, it is clear that the legislature's primary focus was on addressing non-motorist traffic fatalities. Restitution was addressed in the specific context of civil, not criminal, traffic violations. We may therefore only "presume that had the legislature been aware of the unconstitutionality of the limitation . . . , they would have enacted the remainder of the statute without what is now the offending portion." *Prentiss*, 163 Ariz. at 86 (quoting *State v. Watson*, 120 Ariz. 441, 445 (1978)).

**¶37** Patel's and amici's reference to subsection (G)'s amendment in 2018 does not alter our assessment. Following a tragic incident where a driver—lacking the requisite insurance due to a previous DUI offense—ran a red light and killed a pedestrian, the legislature sought to close this lack of insurance "loophole" in §§ 28-675 and -676. *Hearing on H.B. 2522 Before the H. Comm. on Judiciary and Pub. Safety*, 53rd Leg., 2d Reg. Sess. (Ariz. 2018) (statement of Rep. Maria Syms, Member, H. Comm. on Judiciary and Pub. Safety). Authorities realized in reviewing the pedestrian's death that neither §§ 28-675 nor -676 provided a basis to charge a felony under the circumstances. *Id.* But at no time over the course of the bill's enactment was there any conditioning or linking of restitution with the definition and classification of criminal offenses in § 28-672.

---

[7] The crimes of assault and driving under the influence ("DUI") illustrate a similar statutory approach. The basic elements comprising misdemeanor assault are set forth at A.R.S. § 13-1203, with felony classifications in A.R.S. § 13-1204 based on additional circumstances, such as using a deadly weapon or rendering a victim unable to resist. A misdemeanor DUI, A.R.S. § 28-1381, can be classified as a felony if a child under the age of 15 is in the car or if the impaired driver has had their privilege to drive suspended, cancelled, revoked, or refused. A.R.S. § 28-1383.

¶**38** In light of the fact that it is fundamentally the province of the legislature to "[d]efin[e] crimes and fix[] penalties," *State v. Wagstaff*, 164 Ariz. 485, 490 (1990), we are mindful that finding subsection (G) unseverable would necessarily result in finding the entirety of the 2006 amendments to § 28-672 invalid. This would reinstate the previous civil penalties, negating the current criminal classification for violations of § 28-672. And on five separate occasions during the intervening years since H.B. 2208 was enacted, the legislature has added to the list of traffic violations in §§ 28-672, -675, and -676. Therefore, with the foregoing in mind and having concluded that the valid provisions of § 28-672 are fully operable without subsection (G), and that the legislative history provides no indication that the criminal provisions and subsection (G) are so intimately related that one would not have been enacted without the other, we find subsection (G) severable. If we have erred in discerning the legislature's intent in limiting restitution when amending § 28-672, it may certainly exercise its authority to reclassify the penalties therein. But, once having created a criminal offense, the legislature may not restrict the rights of victims "against whom the criminal offense has been committed." Ariz. Const. art. 2, § 2.1(C).

## IV.

¶**39** Section 28-672(G) is an unconstitutional limitation on the right to receive prompt restitution as guaranteed by the VBR. We affirm the court of appeals opinion, reverse the superior court's order, vacate any resulting restitution judgment, and reinstate the municipal court's restitution order in the amount of $61,191.99.