IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**LISA GILPIN,**
*Petitioner,*

*v.*

**HON. DANIELLE HARRIS, JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF PINAL,**
*Respondent Judge,*

**MARCOS JERELL MARTINEZ,**
*Real Party in Interest.*

No. CR-23-0252-PR
Filed August 7, 2024

Appeal from the Superior Court in Pinal County
The Honorable Danielle Harris, Judge
No. CR201800324
**REMANDED**

Order of the Court of Appeals, Division Two
No. 2 CA-SA 23-0067
Filed August 28, 2023

COUNSEL:

Colleen Clase (argued), Arizona Voice for Crime Victims, Phoenix, Attorney for Lisa Gilpin

Kate Milewski, Pinal County Public Defender, Kevin D. Heade (argued), Defender Attorney, Pinal County Public Defender's Office, Florence, Attorneys for Marcos Jerell Martinez

Randall Udelman, Arizona Crime Victim Rights Law Group, Scottsdale, Attorneys for Amici Curiae National Crime Victim Law Institute, et al.

JUSTICE BEENE authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ and JUSTICES BRUTINEL, BOLICK, MONTGOMERY, and KING joined.

JUSTICE BEENE, Opinion of the Court:

¶1 Legally insane individuals have been excused from criminal responsibility under Arizona law since at least 1901. Renée Melançon, *Arizona's Insane Response to Insanity*, 40 Ariz. L. Rev. 287, 294 (1998). But after a series of high-profile acquittals in the 1980s and 1990s, our legislature reduced the scope of the insanity defense. *See id.* at 294–99. Now, Arizona no longer has a traditional "not guilty by reason of insanity" defense. Instead, criminal defendants may be adjudicated "guilty except insane" ("GEI"). *See* A.R.S. § 13-502.

¶2 In *State v. Heartfield*, 196 Ariz. 407, 410 ¶ 10 (App. 2000), our court of appeals held that defendants adjudged GEI are not responsible for their actions and, thus, do not have to pay restitution to their victims. In this Opinion, we examine the legislature's changes to our state's insanity defense and conclude that the legislature has assigned criminal responsibility to GEI defendants. In light of this legislative objective, we overrule *Heartfield* and hold that restitution is available from GEI defendants who cause or threaten to cause death or serious bodily injury.

## BACKGROUND

¶3 Marcos Martinez killed his grandmother and subsequently pleaded GEI to first degree murder. Pursuant to his plea agreement, he was committed to the Arizona State Hospital and will remain under the jurisdiction of the superior court for the rest of his life. But—unlike what would have been the case with a guilty plea—Martinez's GEI plea did not include restitution for the victims of his crime.

¶4 Lisa Gilpin claims to be a victim of Martinez's crime. She sought roughly $18,300 in restitution from Martinez under Arizona's Victims' Bill of Rights (the "VBR").[1] But the superior court denied her

---

[1] The relationship between the putative victim, Gilpin, and the decedent in this case is unclear on the current record. Nor is it clear whether the amount

request. It explained that, under *Heartfield*, a judgment of GEI is not a "conviction" for the purposes of restitution—and, therefore, restitution was unavailable.

¶5 Gilpin sought special action review from the court of appeals, but the court declined jurisdiction. We granted review because a crime victim's entitlement to restitution from a GEI defendant is a recurring issue of statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶6 This Court reviews issues of statutory and constitutional interpretation de novo. *Cox v. Ponce*, 251 Ariz. 302, 304 ¶ 7 (2021); *Puente v. Ariz. State Legislature*, 254 Ariz. 265, 268 ¶ 6 (2022).

### I.

¶7 In Arizona, "a victim of crime has a right . . . [t]o receive prompt restitution from the person or persons convicted of the criminal conduct that caused the victim's loss or injury." Ariz. Const. art. 2, § 2.1(A)(8); *see also State v. Patel*, 251 Ariz. 131, 135 ¶ 14 (2021) (explaining that the VBR grants victims the right to be restored to their pre-crime economic position). Thus, to determine whether a GEI defendant is responsible for restitution, we must determine whether a defendant adjudged GEI under § 13-502 has been "convicted of . . . criminal conduct." This, in turn, requires construing the word "convicted" as used in article 2, section 2.1(A)(8), as well as interpreting § 13-502 in the context of Arizona's GEI framework.

### A.

¶8 We focus first on the constitutional right conferred by section 2.1(A)(8) of the VBR. The constitution does not define "convicted," so we give the term its plain meaning. *See Matthews v. Indus. Comm'n*, 254 Ariz. 157, 164 ¶ 34 (2022). And we use context and dictionary definitions to help identify this plain meaning. *See In re Drummond*, 543 P.3d 1022, 1025 ¶ 7 (Ariz. 2024). The meaning of "convicted" varies in context, *see State v. Green*, 174 Ariz. 586, 587 (1993), but it is ordinarily understood to mean a finding—

---

of restitution demanded by Gilpin is adequately substantiated. These issues are not before us, however, and must be resolved by the superior court.

or an accepted plea — of guilt, *see In re Lazcano*, 223 Ariz. 280, 282 ¶ 7 (2010); *see also State v. Superior Court*, 138 Ariz. 4, 6 (App. 1983). This understanding conforms with dictionary definitions. In the criminal context, "conviction" means "finding someone guilty of a crime; the state of having been proved guilty" and "[t]he judgment . . . that a person is guilty of a crime." *Conviction*, Black's Law Dictionary (11th ed. 2019).

¶9 Here, nothing in the VBR suggests that anything other than this ordinary meaning and definition should apply. We therefore conclude that, in the context of the VBR, being convicted of criminal conduct is synonymous with being found guilty of a crime. But this begs the question: What does it mean to be found guilty of a crime?

¶10 As with "conviction," dictionary definitions are instructive when discerning the meaning of the word guilty. "Guilty," in the criminal context, means "[h]aving committed a crime; *responsible* for a crime." *Guilty*, Black's Law Dictionary (11th ed. 2019) (emphasis added). Thus, being found guilty of a crime is synonymous with being found responsible for having committed a crime.

¶11 In this light, a simple syllogism reveals the plain meaning of article 2, section 2.1(A)(8). "Convicted" means a finding of guilt, and "guilty" means being held responsible. Therefore, being convicted of criminal conduct means being held responsible for criminal conduct. Accordingly, under the VBR, a crime victim has a right to receive restitution from the person *held responsible for the crime* causing his or her loss.

**B.**

¶12 Having established that the meaning of the word convicted in article 2, section 2.1(A)(8) is based on the concept of criminal responsibility, we now turn to whether a GEI defendant is held criminally responsible under § 13-502.

**1.**

¶13 As always, we start with the statutory text. *Drummond*, 543 P.3d at 1025 ¶ 5. But when the text is ambiguous — that is, "if more than one reasonable interpretation exists" — this Court turns to secondary interpretive techniques. *Id.* As relevant here, § 13-502(A) provides that:

> A person may be found guilty except insane if at the time of the commission of the criminal act the person was afflicted

with a mental disease or defect of such severity that the person did not know the criminal act was wrong. A mental disease or defect constituting legal insanity is an affirmative defense.

The statute also informs us that a "guilty except insane verdict is not a criminal conviction for sentencing enhancement purposes under § 13-703 or 13-704." § 13-502(E).

¶14 Here, § 13-502 is ambiguous because it has more than one reasonable meaning. On the one hand, § 13-502(A) refers to a person being "found guilty"—which suggests a finding of criminal responsibility. *See* Part I(A). And subsection (D) instructs the judge to calculate and "suspend" a sentence, which suggests the "except insane" attached to the guilty finding only affects sentencing. Indeed, subsection (E) informs us that a GEI verdict is "not a criminal conviction *for sentencing enhancement purposes*." (Emphasis added.) This indicates that a GEI verdict is a criminal conviction outside of sentencing enhancement, or else the last clause of subsection (E) would be redundant. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012) ("[E]very word and provision is to be given effect . . . .").

¶15 On the other hand, the words "except insane" follow the words "found guilty," suggesting that a legally insane defendant is excluded from being held criminally responsible. *See Exception*, Merriam-Webster, https://www.merriam-webster.com/dictionary/exception (last visited Aug. 1, 2024) (defining "exception" as "the act of excepting" and "exclusion"). Furthermore, subsection (A) classifies a "mental disease or defect constituting legal insanity [a]s an affirmative defense." And an "affirmative defense" is defined as a defense "that attempts to excuse the criminal actions of the accused." A.R.S. § 13-103(B). This suggests that, under § 13-502(A), mental diseases or defects may negate criminal responsibility and culpability. *See State v. Holle*, 240 Ariz. 300, 304 ¶ 22 (2016). Unlike traditional affirmative defenses, however, GEI verdicts do not result in an acquittal. *See State v. Reese*, 967 P.2d 514, 516 (Or. Ct. App. 1998) ("A guilty except for insanity finding is not an acquittal—it is a *guilty verdict*.").

¶16 Other statutes' references to GEI verdicts also fail to clarify the issue. Several statutes imply that convictions are distinguishable from GEI verdicts—at least for some purposes. *See, e.g.*, A.R.S. § 13-4033(A)(1) (distinguishing between a "final judgment of conviction or verdict of guilty

except insane"); A.R.S. § 13-4518(A)(2) ("ever been convicted of or found guilty except insane"); A.R.S. § 14-2803(L)(2) ("'Felonious and intentional' means a conviction or a finding of guilty except insane . . . ."). But these distinctions do not conclusively establish a given meaning, and other statutory text implies that confinement in a secure mental health facility flows from a conviction. *See* A.R.S. § 13-4401(14) ("'Post-conviction release' means . . . discharge from . . . a secure mental health facility."). These inconsistent distinctions between convictions and GEI verdicts do nothing to clear up § 13-502's facial ambiguity.

¶17 At bottom, § 13-502 can reasonably be read to either excuse a defendant from criminal responsibility or to result in a finding of guilt. Because the statute can be reasonably read in more than one way, it is ambiguous. It is therefore appropriate to deploy secondary interpretive techniques, including examining the statute's history, effects, and consequences.

**2.**

¶18 The textual evolution of § 13-502—i.e., its statutory history— reveals a legislative objective to hold GEI defendants responsible for their criminal conduct. This assignment of criminal responsibility is further reinforced by the effects and consequences of a GEI verdict.

¶19 We begin with an analysis of how the GEI statute's text has been amended by the legislature over time. Arizona's historical insanity defense emphasized an insane defendant's non-culpability for criminal conduct. *See* § 13-502 (1984). It read, in relevant part:

> A person is *not responsible for criminal conduct* by reason of insanity if at the time of such conduct the person was suffering from such a mental disease or defect as not to know the nature and quality of the act, or if such person did know, that such person did not know that what he was doing was wrong.

§ 13-502(A) (1984) (emphasis added). This text is clear: A defendant who successfully asserted an insanity defense under this version of § 13-502 was *not responsible* for his or her criminal conduct.

¶20 Starting in 1993, however, the legislature began narrowing the scope of § 13-502. First, the legislature repealed the "not

responsible . . . by reason of insanity" verdict and replaced it with a GEI verdict. 1993 Ariz. Sess. Laws ch. 256, §§ 2, 3 (1st Reg. Sess.). The legislature simultaneously established the Psychiatric Security Review Board ("PSRB") to oversee GEI defendants charged with more serious crimes. *See id.* § 7. In 2007, the legislature instructed judges to "sentence"—instead of "commit"—a GEI defendant "to a term of incarceration in the state department of corrections" and "order the defendant to be placed under the jurisdiction of the [PSRB] and committed to a state mental health facility." 2007 Ariz. Sess. Laws ch. 138, § 1 (1st Reg. Sess.). The same year, the legislature drastically curtailed GEI defendants' eligibility to be released before their sentences ended. *See id.* § 2. More recently, in 2021, the legislature amended § 13-502 to (1) clarify that the sentence imposed by the court is suspended while the GEI defendant is incarcerated in a secure mental health facility and (2) keep the defendant under the jurisdiction of the superior court for the duration of the suspended sentence. 2021 Ariz. Sess. Laws ch. 390, § 4 (1st Reg. Sess.).[2]

**¶21** The legislature plainly demonstrated an objective to hold GEI defendants responsible for their criminal conduct by amending the GEI statute over time. Two changes are especially significant. First, and most importantly, the legislature excised exculpatory language from the GEI statute in 1993. Specifically, the legislature repealed the "not responsible" verdict and replaced it with a GEI verdict. This change strongly suggests the legislature intended to assign criminal responsibility to legally insane defendants. And second, legislative changes in 2007 and 2021 plainly indicate that GEI defendants are *sentenced* and not just committed. This is significant because a sentence follows a finding of guilt. *See Sentence*, Black's Law Dictionary (11th ed. 2019) (defining "sentence" as "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty"). In conjunction, these textual changes show that a GEI verdict results in criminal responsibility comparable to a finding of guilt.

**¶22** In addition to this statutory history, the effects and consequences of a GEI verdict also suggest that the legislature intends for GEI defendants to be legally responsible for their criminal conduct.

---

[2] We note that, effective July 1, 2023, the legislature vested the superior court with all powers and duties of the PSRB; the court now has "exclusive supervisory jurisdiction" over anyone previously under PSRB supervision. 2021 Ariz. Sess. Laws ch. 390, § 42 (1st Reg. Sess.).

¶23     To understand the effects and consequences of a GEI verdict, we must examine the interplay among three related statutes in our state's GEI framework. The first statute is § 13-502 itself, which instructs courts how to proceed when a defendant is found GEI:

> [T]he court shall determine the sentence the defendant could have received pursuant to § 13-707 or § 13-751, subsection A or the presumptive sentence the defendant could have received pursuant to [Arizona's felony sentencing statutes] if the defendant had not been found insane, and the judge shall suspend the sentence and shall order the defendant to be placed and remain under the jurisdiction of the superior court and committed to a secure state mental health facility . . . for the length of that sentence.

§ 13-502(D). In other words, when a defendant is adjudged GEI, the court must (1) determine the appropriate sentence for a legally sane defendant; (2) impose and suspend that sentence; (3) order the defendant to remain under the jurisdiction of the court for the length of the sentence; and (4) commit the defendant to a secure facility for the length of the sentence. *Id.*; *see also* A.R.S. § 13-3992(A).

¶24     The second relevant statute, § 13-3992, confirms the procedure described in § 13-502(D): Anyone found GEI must "be committed to a secure mental health facility for a period of treatment." *Id.* Also, as relevant to Martinez, when a GEI defendant's actions caused, or threatened to cause, death or serious physical injury:

> [T]he court shall retain jurisdiction over the person [i.e., the GEI defendant] for the entirety of the commitment term. The court shall state the beginning date, length and ending date of the commitment term and the court's jurisdiction over the person. The length of jurisdiction over the person is equal to the sentence the person could have received pursuant to § 13-707 or § 13-751, subsection A or the presumptive sentence the person could have received pursuant to [Arizona's felony sentencing statutes].

§ 13-3992(D). Put simply, if a GEI defendant causes, or threatens to cause, death or serious injury, the court must impose a determinant sentence and retain jurisdiction over the defendant for the sentence's duration. *See id.*

¶25        The third statute at play, A.R.S. § 13-3994, provides a mechanism to change the nature of a GEI defendant's commitment term. Modifying the nature of the term may only occur pursuant to a hearing, after which the court may take the following actions:

> 1.        If . . . the person still has a mental disease or defect and is dangerous, the court shall order that the person remain committed at the secure mental health facility.
> 2.        If . . . the person no longer needs ongoing treatment for a mental disease or defect and is not dangerous, the court shall place the person on supervised probation for the remainder of the commitment term . . . .
> 3.        If . . . the person still has a mental disease or defect or . . . the mental disease or defect is in stable remission but the person is no longer dangerous, the court shall order the person's conditional release. The person shall remain under the court's jurisdiction.
> 4.        If the person could have been sentenced pursuant to § 13-704, § 13-710 or § 13-751, subsection A and the court finds that the person no longer needs ongoing treatment for a mental disease or defect and the person is dangerous, the court shall impose the sentence and order the person to be transferred to the state department of corrections for the remainder of the commitment term. All time spent under the court's jurisdiction and any time spent committed pursuant to this section shall be credited against any sentence imposed.

§ 13-3994(B).   In short, after being committed, GEI defendants whose actions caused death, serious injury, or the threat of either may be eligible for changes to their commitment, including incarceration, based on whether they (1) need continuing treatment and (2) are "dangerous." *See id.* Depending on treatment needs and dangerousness, the reviewing court may choose from the four dispositions listed above, including incarceration—but none of the dispositions results in an unconditional release.  When GEI defendants cause or threaten death or serious injury, they will remain under the court's jurisdiction—and some level of supervision—until their suspended sentence expires.

¶26        Like the statutory history of § 13-502, the effects and consequences of §§ 13-502, -3992, and -3994 reveal a legislative intention to hold legally insane defendants responsible for their criminal conduct.  Once a defendant is adjudged GEI, the court must immediately impose a

sentence. The court also must assume jurisdiction over the defendant, remanding him or her to a secure state facility. And when GEI defendants' actions cause death, serious injury, or the threat of either, they are *never* eligible for early release from the jurisdiction of the superior court and will *never* be eligible for release from supervision until their sentence ends— barring extraordinary executive action. For Martinez, this means that he will likely be under the court's jurisdiction and some form of supervision for his remaining life.

¶27 At bottom, § 13-502's history, as well as the effects and consequences of a GEI verdict, demonstrate a legislative purpose to hold GEI defendants like Martinez responsible for their criminal conduct. Accordingly, a person adjudged GEI is held criminally responsible for his or her actions.

## C.

¶28 For the preceding reasons, we conclude that Martinez has been "convicted" within the meaning of article 2, section 2.1(A)(8) of the Arizona Constitution. This section gives crime victims the right to receive restitution from the person held criminally responsible for the crime causing their economic loss. *See* Part I(A). Though the plain meaning of § 13-502 and its related statutes is not readily apparent, secondary interpretive techniques conclusively establish that the legislature intended to hold GEI defendants criminally responsible for actions causing death, serious injury, or the threat of either. *See* Part I(B). This responsibility differs in some ways from the responsibility of a legally sane defendant, but it nevertheless bears the indicia of guilt and culpability. Accordingly, when a GEI defendant has caused or threatened to cause death or serious bodily harm, the defendant's victim is entitled to restitution for any resulting economic loss.[3]

## II.

¶29 Having determined that victims are entitled to restitution from GEI defendants like Martinez, we turn to two additional issues. First, we analyze *Heartfield*, the case the superior court relied on to deny Gilpin's restitution request. We then address the constitutional concerns initially

---

[3] We do not address whether a GEI defendant whose actions did *not* cause or threaten to cause death or serious bodily harm is responsible for restitution.

advanced by Martinez in his supplemental brief and addressed at oral argument.

## A.

**¶30** The superior court relied on *Heartfield* when ruling that a GEI verdict is not a conviction and that restitution was unavailable. But the analysis in *Heartfield* was flawed. This is because the *Heartfield* court focused too narrowly on some textual changes to § 13-502, ignored others, and supported its textual analysis with discarded public policy to reach its conclusion.

**¶31** In *Heartfield*, the court used *State ex rel. Collins v. Superior Court*, 150 Ariz. 295 (1986), to establish that "before [§ 13-502] was amended . . . 'the long standing [sic] policy of this state has been that persons who are insane are not responsible for criminal conduct and are therefore not subject to punishment.'" *Heartfield*, 196 Ariz. at 410 ¶ 8 (quoting *Collins*, 150 Ariz. at 298). Bolstered by this pre-amendment policy, the court concluded that a GEI defendant could not be held responsible for his or her actions. *Id.* Finding that "there must be an element of responsibility before a defendant may be ordered to pay restitution," the court held that restitution was unavailable from GEI defendants. *Id.* at 410 ¶ 10.

**¶32** We reject *Heartfield*'s flawed reasoning. After failing to engage in a thorough textual analysis, *Heartfield* relied heavily on public policy divined from a version of § 13-502 that materially and directly conflicts with the amended version. Given this errant analysis, *Heartfield* is overruled.

## B.

**¶33** Martinez insists that "[a]n interpretation of Arizona's GEI scheme that concludes the insane are convicted of a crime would render it unconstitutional" because such an interpretation impermissibly diminishes Arizona's moral-incapacity defense.[4] We do not address this argument,

---

[4] *See, e.g.*, *Clark v. Arizona*, 548 U.S. 735, 770–71 (2006) (explaining that a defendant must have some ability to introduce "mental-disease and capacity evidence"); *Kahler v. Kansas*, 589 U.S. 271, 284–86 (2020) (explaining that either a moral-incapacity or diminished-capacity defense satisfy the constitutional requirement that states have an insanity defense that negates

however, because Martinez did not raise it at the court of appeals or in his response to Gilpin's petition for review. Because of this, interested parties did not have an opportunity to brief the issue. We therefore leave this, and any other, constitutional challenges for another day and decline to address them at this time. *See State v. Johnson*, 247 Ariz. 166, 180 ¶ 13 (2019).

## CONCLUSION

**¶34**         For the foregoing reasons, we hold that victim restitution is available from defendants adjudged GEI when the defendants' actions caused or threatened death or serious injury. We remand to the superior court to determine whether Gilpin is eligible for restitution, the amount of restitution owed, whether Martinez is liable for restitution payments while suffering from a mental disease or defect, and for further proceedings consistent with this Opinion.

---

criminal liability); *see also State v. Mott*, 187 Ariz. 536, 544–55 (1997) (holding that expert testimony of mental incapacity cannot be used to establish a diminished-capacity defense by negating a crime's mens rea).