IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**STATE OF ARIZONA,**
*Petitioner,*

*v.*

**HON. ERIC E. GORDON, JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF MOHAVE,**
*Respondent Judge,*

**GREGORY JAMES OWEN,**
*Real Party in Interest.*

---

No.   CR-24-0064-PR
Filed December 12, 2025

---

Special Action from the Lake Havasu Consolidated Court
No.   M0844TR2022000209
**REVERSED**

---

Appeal from the Superior Court in Mohave County
The Honorable Eric E. Gordon, Judge
No.   CR202300497
**AFFIRMED**

---

Opinion of the Court of Appeals, Division One
257 Ariz. 95 (App. 2024)
**VACATED**

---

COUNSEL:

Charles F. Yager, Lake Havasu City Attorney, Sherman Jackson (argued), Assistant City Prosecutor, Lake Havasu City, Attorneys for State of Arizona

Lawrence I. Kazan, Gregory M. Zamora, Debus & Kazan, LTD, Phoenix; and Molly Patricia Brizgys, Kathleen E. Brody (argued), Mitchell Stein Carey Chapman, PC, Phoenix, Attorneys for Gregory James Owen

Kevin D. Heade, Arizona Attorneys for Criminal Justice, Florence, and Mikel Steinfeld, Phoenix, Attorneys for Amicus Curiae Arizona Attorneys for Criminal Justice

Eric M. Fraser (argued), Michael A. Moorin, Osborn Maledon, P.A., Phoenix, Attorneys for Amici Curiae of Cathy Feck, Dolores Adams, and the Estate of Charles Feck

────────────────

JUSTICE MONTGOMERY authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ, and JUSTICES BEENE and KING joined. JUSTICE BOLICK, joined by JUSTICE PELANDER (Retired),[*] dissented.

JUSTICE MONTGOMERY, Opinion of the Court:

¶1 Gregory James Owen rear-ended a Jeep stopped at a red light, killing one of the Jeep's passengers. After rear-ending the Jeep, Owen's vehicle continued through the red light and into the intersection. Consequently, the State charged Owen with violating the enhanced penalty statute, A.R.S. § 28-672, predicated on a violation of the red-light statute, § 28-645(A)(3)(a).

¶2 The enhanced penalty statute imposes a criminal penalty for violating one of several enumerated civil traffic statutes if "the violation results in an accident causing serious physical injury or death to another person." A.R.S. § 28-672(A). One of those statutes is the red-light statute, which provides that "vehicular traffic facing a steady red signal alone shall stop before entering the intersection and shall remain standing until an indication to proceed is shown."[1] See § 28-645(A)(3)(a).

─────────────

[*] Justice Maria Elena Cruz is recused from this matter. Pursuant to article 6, section 3 of the Arizona Constitution, Justice John Pelander (Retired) was designated to sit in this matter.

[1] "A person who violates [§ 28-645(A)(3)(a)] is subject to a civil penalty . . . ." A.R.S. § 28-1521.

¶3        In this case, we must determine whether the enhanced penalty statute applies to a fatal accident that occurs before the offending vehicle enters an intersection against a red light.   We hold that because a red-light violation can only be committed once the vehicle enters an intersection, the enhanced penalty statute cannot apply to a fatal accident that occurs before an intersection, whether the accident consists of a single collision or the first in a series of events.

**FACTS & PROCEDURAL BACKGROUND**

¶4        Owen was driving a motorhome on SR 95 in Lake Havasu City when he rear-ended a Jeep Grand Cherokee that was stopped at a red light at the intersection of SR 95 and Acoma Blvd.[2]   The impact propelled the Jeep into and through the other side of the intersection, killing one of the passengers.   Owen's motorhome also continued through the intersection while facing a red light.   The State charged Owen with causing death by a moving violation under the enhanced penalty statute based on a red-light violation.

¶5        Following a bench trial, the municipal court observed in a minute order disposing of the case "that in using the term 'accident' the [L]egislature intended to mean that series of events that constitute an accident."   The court therefore concluded that the "series of events that constitute the 'accident' . . . includes and can be attributed to the defendant's violation of A.R.S. 28-645(A)(3)(a)."   The court consequently found Owen guilty as charged.

¶6        Owen appealed the verdict to the superior court, arguing that he did not commit a red-light violation that resulted in the victim's death because "the accident happened before the intersection, and the predicate moving violation can only happen upon entering an intersection."   The superior court found that Owen did commit a moving violation because he

_____

[2]   We have included an overhead photo of the intersection in question as an Appendix.   *See* Ariz. R. Evid. 201; *see also, e.g.*, *State v. Phillips*, 102 Ariz. 377, 380 (1967) (confirming that courts may take judicial notice of a geographic fact).

ran a red light.[3]   However, the court also found, as a matter of law, that, because the accident occurred before Owen ran the red light, he was not guilty of violating the enhanced penalty statute.   Accordingly, the superior court reversed the municipal court's finding of guilt and directed a verdict of acquittal.

¶7        The State then filed a special action petition with the court of appeals, challenging the superior court's interpretation of the red-light and enhanced penalty statutes.   Echoing the municipal court, the court of appeals reasoned that the use of the term "accident" in the enhanced penalty statute encompasses a series of events broader than a single collision.   *State v. Gordon*, 257 Ariz. 95, 99 ¶ 15 (App. 2024).   Consistent with this reasoning and in reliance on *State v. Powers*, 200 Ariz. 123, 126 ¶ 9 (App. 2001), and other out-of-state authorities, the court offered the following broad interpretation of the term "accident": "when determining whether an accident resulted from a red-light violation, a court must consider an accident as a continuous event in which the traffic violation causes an event that results in death or injury."   *Gordon*, 257 Ariz. at 99–100 ¶¶ 15–16.

¶8        Accordingly, the court reasoned that when "a driver fails to stop and remain standing at a red light and then hits another vehicle, immediately propelling both vehicles into the intersection, the entire event—from initial collision to when the vehicles ultimately cease movement—is an accident that resulted from the driver's failure to stop at the red light."   *Id.* at 100 ¶ 19.   The court thus concluded that imposition of the enhanced penalty does not require a driver to run a red light before the initial collision so long as the accident comprises one continuous event that results from a driver failing to stop at a red light.   *Id.* ¶ 21.   Consequently, the court vacated the superior court's decision and remanded the case to the municipal court for further proceedings.   *Id.*

¶9        We granted Owen's petition for review because whether a driver must enter an intersection to commit a red-light violation before an accident for the enhanced penalty statute to apply is an issue of statewide importance.   We have jurisdiction pursuant to article 6, section 5(3) of the

---

[3]    Owen contends that "the municipal court and superior court erroneously concluded that Owen violated the red-light statute."   This issue is not before us.

Arizona Constitution.

## DISCUSSION

**¶10** Owen argues that the enhanced penalty statute requires "both a causal link and a certain temporal relationship" with the red-light statute, such that it requires a red-light violation "**before** the accident and **before** the resulting injury or death." Owen thus contends that he is not guilty of violating the enhanced penalty statute because he committed a red-light violation only after he collided with the Jeep.

**¶11** The State disagrees, asserting first that the enhanced penalty statute uses the word "accident" instead of "collision," which is a broader term covering the entire event that begins when Owen struck the Jeep and ends when the vehicles came to rest. The State therefore concludes that because "the required conduct is the violation of the red-light statute and the required result is the accident causing serious physical injury or death," the enhanced penalty statute's causation requirement is satisfied.

**¶12** We review the interpretation of statutes de novo. *Cao v. PFP Dorsey Invs., LLC*, 257 Ariz. 109, 113 ¶ 15 (2024). "Our task in statutory construction is to effectuate the text if it is clear and unambiguous." *In re Drummond*, 257 Ariz. 15, 18 ¶ 5 (2024) (quoting *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 19 ¶ 9 (2018)). To effectuate the text "we interpret statutes according to their plain language," *id.*, giving "words 'their ordinary meaning unless it appears from the context or otherwise that a different meaning is intended,'" *State v. Luviano*, 255 Ariz. 225, 228 ¶ 10 (2023) (quoting *Ariz. ex rel. Brnovich v. Maricopa Cnty. Cmty. Coll. Dist. Bd.*, 243 Ariz 539, 541 ¶ 7 (2018)). And "[w]here unambiguous, we apply the express terms of a . . . statutory provision without resorting to secondary methods of construction." *Mussi v. Hobbs*, 255 Ariz. 395, 398 ¶ 13 (2023) (quoting *Arizonans for Second Chances, Rehab., & Pub. Safety v. Hobbs*, 249 Ariz. 396, 406 ¶ 28 (2020)).

**¶13** We are also mindful that the provisions of a penal statute "must be construed according to the fair meaning of their terms to promote justice and effect the objects of the law, including the purposes stated in § 13-101." A.R.S. § 13-104. One of the stated purposes set forth in A.R.S. § 13-101(2) is "[t]o give fair warning of the nature of the conduct proscribed . . . ." We turn to consider what constitutes a red-light violation.

5

## A.  Arizona's Red-Light Statute

**¶14**        Owen asserts that any red-light violation requires a driver's failure to "stop before entering the intersection and . . . remain standing." The State counters that a driver can commit a red-light violation without ever entering the intersection, as does the court of appeals, *Gordon*, 257 Ariz. at 100 ¶ 21, and the dissent, *infra* ¶ 43.

**¶15**        As noted, the red-light statute requires: (1) a driver facing a red-light to "stop"; (2) "*before entering* the intersection"; and (3) "remain standing until an indication to proceed is shown." § 28-645(A)(3)(a) (Emphasis added.)   Thus, a red-light violation can only occur in one of two ways: (1) when a driver's vehicle enters an intersection facing a steady, red signal without stopping; or (2) after having come to a stop before an intersection with a red light, the driver enters the intersection against the red light.   In either event, the driver must enter the intersection to commit a violation.  *See Flashberg v. Krebs*, 8 Ariz. App. 254, 256 (1968) (stating that a materially identical prior version of § 28-645(A)(3)(a) "imposes the duty to stop for a red light before entering an intersection")[4]; *see also Lemieux v. Superior Court*, 132 Ariz. 214, 215 (1982) (noting that liability under a materially identical prior version of § 28-645(A)(3)(a) "turns on the precise location of the [driver's] vehicle at the moment the light turned red").[5] Moreover, the Legislature has literally drawn a line to demarcate at what point a violation occurs by defining an intersection as "the area embraced within the prolongation or connection of the lateral curb lines . . . ."  A.R.S. § 28-601(8).[6]

**¶16**        Accepting the State's argument would void the requirement to stop "before entering the intersection."        Likewise, the dissent's

---

[4]   In 1968, § 28-645(A)(3)(a) provided that: "Vehicular traffic facing the signal shall stop before entering the cross walk on the near side of the intersection or, if there is no cross walk, then before entering the intersection, and shall remain standing until green or 'Go' is shown alone . . . ."

[5]   In 1982, § 28-645(A)(3)(a) stated that: "Vehicular traffic facing a steady red signal alone shall stop before entering the intersection, and shall remain standing until an indication to proceed is shown . . . ."

[6]   We have identified the intersection in the Appendix in yellow as defined by the statute.

overemphasis on "stop" as the "actus reus" negates the intersection element. *Infra* ¶ 45. And we must "give meaning to '[e]ach word, phrase, clause, and sentence [of a statute] so that no part will be void, inert, redundant, or trivial.'" *Mussi*, 255 Ariz. at 398 ¶ 13 (first alteration in original) (quoting *City of Phoenix v. Yates*, 69 Ariz. 68, 72 (1949)).

¶**17** Thus, in the matter before us, Owen could not commit a red-light violation until *after* his vehicle crossed the connection of the lateral curb lines comprising the intersection of SR 95 and Acoma Blvd. We next consider the circumstances in which the enhanced penalty statute applies to an accident.

## B. Arizona's Enhanced Penalty Statute

¶**18** Owen argues that because the accident occurred before he went through the red light, any red-light violation did not result in an accident. The State asserts—as the court of appeals, *Gordon*, 257 Ariz. at 99 ¶ 15, and the dissent, *infra* ¶ 49, likewise reason—that the accident here, for purposes of imposing an enhanced penalty, constituted an entire series of events commencing with the initial impact and continuing through the intersection. Thus, the State further argues that "[t]he contact with the victim's vehicle and defendant's vehicle was a simultaneous event with failing to stop for a red light and barreling through the entire intersection." The State therefore concludes that "Owen's failure to stop at a red light and remain standing directly caused both vehicles to go through the entire intersection and cause the death of [the Jeep's passenger]."

¶**19** An enhanced penalty for a civil traffic violation only applies if: (1) a driver violates a specified statute; (2) that "violation results in an accident"; and (3) that accident "caus[es] serious physical injury or death to another person." § 28-672(A)(1). As noted by the court of appeals, the Legislature did not define "results in." *Gordon*, 257 Ariz. at 100 ¶ 18. Accordingly, we may look to a dictionary to "define a word's natural and obvious meaning." *See State v. Jones*, 188 Ariz. 388, 392 (1997). And in this case, because "results in" is a phrasal verb that carries the same general meaning as its verb, we consider the definition of "result." *See, e.g.,* Bryan A. Garner, *The Chicago Guide to Grammar, Usage, and Punctuation* 82 (2016).

¶20 Webster's New World College Dictionary (4th ed. 2002) defines "result" as "to happen or issue as a consequence or effect."[7] An accident is thus a consequence of, or the effect of, a moving violation, which makes the violation a cause of the resulting accident. *Cause*, Black's Law Dictionary (8th ed. 2004). The enhanced penalty statute, therefore, establishes a relationship between a moving violation and an accident that constitutes "[a] sequence of causally connected events." *Causation*, The Cambridge Dictionary of Philosophy (3d ed. 2015) (discussing event causation, involving "the act of bringing about an effect, which may be an event"). Accordingly, the plain terms of the enhanced penalty statute require a sequence of events: first, a moving violation, and then, an accident, regardless of whether the accident consists of a single event or a series of events.

¶21 The State therefore errs in arguing that an accident that occurs simultaneously with a violation can satisfy the enhanced penalty statute's requirements. Such a conclusion negates the necessary causal relationship by conflating a sequence of two events into one continuous or simultaneous event. *See* A.R.S. § 13-203 (providing that "[c]onduct is the cause of a result when" it is the but-for cause of a result and "[t]he relationship between the conduct and result satisfies any additional causal requirements imposed by the statute defining the offense.").[8] This error is illustrated with a comparison to our robbery statute, A.R.S. § 13-1902.

---

[7] We cite to the 4th edition of *Webster's New World College Dictionary* because it is close in time to the enactment of the version of § 28-672 before us, *see* 2006 Ariz. Sess. Laws ch. 297 § 1 (2nd Reg. Sess.), and it focuses on the actual use of language and includes terms and usage that first appeared in the United States. ix (Michael Agnes, Ed. in Chief, 4th ed. 2002). Furthermore, "[l]inguistic evidence is collected on a daily basis in the form of citations of words and expressions used in print and speech." *Id.*

[8] Section 13-203 applies to our construction of the enhanced penalty statute pursuant to § 13-102(D): "Except as otherwise expressly provided, or unless the context otherwise requires, the provisions of this title shall govern the construction of and punishment for any offense defined outside this title."

¶22        Section 13-1902(A) provides:

> A person commits robbery if *in the course of* taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property.

(Emphasis added.)    Section 13-1901(2) further provides that "'[i]n the course of committing' includes any of the defendant's acts beginning with the initiation and extending through the flight from a robbery."    In contrast, there is no language in the enhanced penalty statute to suggest that it is sufficient for a moving violation to begin and extend through an accident, or vice versa.   The moving violation and accident events are independent and must proceed sequentially for the enhanced penalty statute to apply.   Nonetheless, the court of appeals and the dissent share the State's conclusion with similar reasoning and with misplaced reliance on inapposite cases.

¶23        As noted, the court of appeals relied on *Powers* to define an accident as consisting of a series of events.   *Gordon* 257 Ariz. at 99 ¶ 15. *Powers* involved a driver who accidentally struck a mother and her infant daughter, killing the mother and seriously injuring the daughter, and then driving away.   *Powers*, 200 Ariz. at 125 ¶ 2.   The question before the court was whether the driver could be charged with one or two counts of leaving the scene of an accident.   *Id.* ¶ 3.   The driver challenged the second count as multiplicitous, which would violate the Double Jeopardy Clause, because there was only one accident scene.   *Id.* ¶ 5.   The State countered that there were two separate accidents, one involving the mother and the second involving the infant.   *Id.* at 126 ¶ 7.   The court concluded that "[t]he plain and ordinary meanings of the terms 'accident' and 'scene of the accident' do not depend on the number of victims.   As commonly understood, only one accident scene exists even though accidents often involve multiple victims and impacts."   *Id.* ¶ 9.[9]

---

[9]   On review before this Court, we noted that "[n]othing in the statute's language refers to accident victims—the focus is on the scene of an accident."   *State v. Powers*, 200 Ariz. 363, 364 ¶ 8 (2001).

**¶24** Given the Double Jeopardy context and the crux of the analysis, it is clear that the court was engaged in determining the appropriate unit of prosecution. *See, e.g.*, *State v. Moninger*, 258 Ariz. 18, 22 ¶ 12 (2024) ("Whether conduct is divisible into separate and distinct violations is informed by the scope of the relevant statute's allowable unit of prosecution."). Thus, *Powers'* consideration of what constitutes an accident is inapposite to this case because the unit of prosecution is not at issue, let alone the number of victims or impacts.[10] Additionally, the court of appeals' misplaced focus on "accident" leads to a conclusion that conflates the predicate event—a red-light violation—with the resulting event, the fatal accident. As discussed, the enhanced penalty statute requires a red-light violation to precede a fatal accident.

**¶25** With respect to the dissent's analysis and conclusion, it contradicts our statutory interpretation jurisprudence, overlooks the successive nature of the causal relationship between a red-light violation and a fatal accident, and misapprehends the application of victim rights.

**¶26** First, the dissent seeks to combine the red-light and enhanced penalty statutes to create a general safety measure "so that the language of § 28-645(A)(3)(a) must be read in the context of the two provisions together." *Infra* ¶ 40. Respectfully, the fact that the red-light statute is enumerated in the enhanced penalty statute necessarily requires that the two be read together. Regardless, as the dissent acknowledges, the enhanced penalty statute cannot change the meaning of the red-light statute. *Infra* ¶ 41. Nonetheless, the dissent asserts that the meaning of both statutes "should be assessed through the lens—the context—of the overall object of the combined statutes," which is "to prevent serious or fatal injuries by requiring vehicles to stop before the intersection at a red light." *Id.* However, we have previously analyzed legislative action regarding the enhanced penalty statute and concluded that "it is clear that the [L]egislature's primary focus was on addressing non-driver traffic fatalities." *State v. Patel*, 251 Ariz. 131, 139 ¶ 36 (2021). Furthermore, "[i]t is a universal rule that courts will not enlarge, stretch, expand, or extend a statute to matters not falling within its express provisions." *State ex rel. Morrison v. Anway*, 87 Ariz. 206, 209 (1960); *see also Mussi*, 255 Ariz. at 402

---

[10] The same is true for the court of appeals' citations to *Commonwealth v. Satterfield*, 255 A.3d 438 (Pa. 2021), and *Nield v. State*, 677 N.E.2d 79 (In. 1997).

¶ 34 ("It is a basic principle that courts will not read into a statute something which is not within the manifest intention of the [L]egislature as indicated by the statute itself." (quoting *Town of Scottsdale v. State ex rel. Pickrell*, 98 Ariz. 382, 386 (1965))). This takes us to the second error.

**¶27** Our colleagues' invocation of *Brogdon v. State*, 683 S.E.2d 99 (Ga. Ct. App. 2009), as well as the court of appeals' approving citation, is problematic for two reasons. First, the *Brogdon* court utilized a method of statutory interpretation inconsistent with this Court's jurisprudence. And second, the *Brogdon* court effectively rewrote the statute in question, an approach inconsistent with this Court's jurisprudence.

**¶28** In *Brogdon*, the Georgia Court of Appeals stated that "[i]n construing statutes, we look to the literal language of the statute, the rules of statutory construction and rules of reason and logic, *the most important of which is to construe the statute so as to give effect to the legislature's intent. Where the literal language does not square with reason or intent, then the literal must yield.*" *Id.* at 104 (emphasis added) (cleaned up).

**¶29** Looking to the text, utilizing canons of construction, and employing rules of reason and logic is all consistent with our jurisprudence. And at first glance, it may seem our approach to applying the plain meaning of a statute—the "literal language" in the parlance of *Brogdon*—is in accord with the *Brogdon* court. *Bilke v. State*, 206 Ariz. 462, 464 ¶ 11 (2003) (noting that we apply the plain meaning of a statute "unless [it] would lead to impossible or absurd results"). However, *Brogdon*'s approach permits a court to ignore the plain meaning of the text if it perceives a departure from legislative intent. In other words, *Brogdon* engages in discerning legislative intent and *then* considers the text. That is not our method. We do not look beyond the text of a statute to discern a legislative purpose absent ambiguity because the plain meaning of the text itself reflects the intent of the Legislature. *S. Arizona Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, 286 ¶ 31 (2023) ("Statutory interpretation requires us to determine the meaning of the words the [L]egislature chose to use."); *Farris v. Advantage Cap. Corp.*, 217 Ariz. 1, 2 ¶ 5 (2007) ("A statute's plain language is the best indicator of legislative intent, and we will not 'engage in other means of statutory interpretation' unless a statute is ambiguous." (quoting *Parrot v. DaimlerChrysler Corp.*, 212 Ariz. 255, 257 ¶ 7 (2006))); *see also State ex rel. Arizona Dep't of Revenue v. Tunkey*, 254 Ariz. 432, 437 ¶¶ 23–24 (2023) (Bolick, Beene, Montgomery, and

King JJ., concurring) (rejecting an approach to statutory interpretation whose "primary goal . . . is to discern and give effect to legislative intent" instead of seeking to "cogently and consistently apply a plain meaning approach" in order to avoid divergent outcomes). The *Brogdon* court's approach, and that of the dissent, further illustrates how this approach can run afoul of other principles of interpretation. *Tunkey*, 254 Ariz. at 437 ¶ 24.

**¶30** Applying its stated method of statutory interpretation, the *Brogdon* court interpreted its red-light statute[11] to "require[] that a driver facing a red traffic light stop behind the stop line or crosswalk *and also behind those vehicles stopped in observance of the traffic light.*" 683 S.E.2d at 104. (Emphasis added.) In reaching this result, *Brogdon* added language to its statute as the dissent does to ours. *Infra* ¶ 46. But "it is not the function of the courts to rewrite statutes." *City of Phoenix v. Butler*, 110 Ariz. 160, 162 (1973). "Moreover, we recognize that a judicial expansion of statutory language can violate a defendant's due process right to fair warning." *Powers*, 200 Ariz. at 126 ¶ 8. And if we were to adopt *Brogdon*'s logic and that of our dissenting colleagues, then a red-light violation could occur anytime a vehicle rear-ended another one anywhere before a red light, regardless of how far it occurred before the intersection. Say, for example, the 80th car from a red light in a traffic jam rear-ends the 79th car. The dissent's logic would result in a red-light violation in this situation, even though they were a quarter mile from the intersection. *See infra* ¶ 46 (asserting that "'[b]efore the intersection can be three inches, ten feet, thirty feet, or some other distance.").

**¶31** Finally, the third error concerns the errant invocation of the Victims' Bill of Rights. Restitution is certainly a constitutionally guaranteed right. *See* Ariz. Const. art. 2, § 2.1(A)(8); *Patel*, 251 Ariz. at 134

---

[11] Ga. Code Ann. § 40-6-21(a)(3)(A) (2014), the statute at issue in *Brogdon*, provides:

> Traffic, except pedestrians, facing a steady CIRCULAR RED signal alone shall stop at a clearly marked stop line or, if there is no stop line, before entering the crosswalk on the near side of the intersection or, if there is no crosswalk, before entering the intersection, and shall remain standing until an indication to proceed is shown.

¶ 11.   But for restitution to be due here, Owen must be "convicted of the criminal conduct that caused the victim's loss or injury."   Art. 2, § 2.1(A)(8).

¶32        However, Owen's red-light violation did not result in the accident because the accident occurred prior to Owen entering the intersection.   Instead, the accident was the result of—a consequence of—Owen's failure to stop before his vehicle collided with the Jeep, which is a violation of § 28-701(A).[12]   However, the Legislature did not include a violation of § 28-701(A) in the enhanced penalty statute.   Therefore, Owen does not stand convicted of criminal conduct for which restitution could be ordered.

¶33        The circumstances here reflect an outcome the Legislature may wish to address.   *See Patel*, 251 Ariz. at 140 ¶ 37 (noting legislative action to address a perceived statutory "loophole" involving a driver who ran a red light and killed a pedestrian).   Regardless, the fact that the plain meaning of the enhanced penalty statute does not achieve the dissent's preferred resolution does not make our application of its plain meaning absurd.   *Infra* ¶ 58.

## CONCLUSION

¶34        For the reasons stated, we vacate the court of appeals' opinion and affirm the superior court's order reversing the municipal court's judgment of conviction and directing a verdict of acquittal.

---

[12]   Consequently, the dissent's claim that our interpretation "absolves Owen of full accountability" is incorrect.   *Infra* ¶ 48.   It is up to the State to charge the appropriate offense.

**APPENDIX**



https://az511.gov/

Owen's vehicle and the Jeep moved right to left through the intersection. *See supra* ¶ 2.

BOLICK, J., joined by PELANDER, J. (Retired), dissenting:

¶35        On January 14, 2022, Gregory James Owen was driving his motorhome trying to make it through a yellow light before it turned red. He failed to get there in time as the light turned red before his arrival.   Had his vehicle entered the intersection on the red light and then smashed into other vehicles thereby causing serious physical injury or death, he would have been subject to an enhanced criminal penalty.

¶36        But in regard to the criminal offense, under the majority's view, Owen was lucky.   Because standing between him and the intersection was a Jeep Grand Cherokee that had properly stopped for the red light.   As the trial court found, Owen's motor home "barrel[ed] into the victim's vehicle . . . forcing both of the vehicles through the red light and finally coming to a stop on the other side of the intersection."   The Jeep's backseat passenger/victim was killed.   But Owen, according to the majority here, was *not* subject to the enhanced criminal statute because the initial crash occurred *before* Owen's motor home hurtled into the intersection.

¶37        If this seems a discordant, improbable result, that is because the enhanced penalty statute does not split hairs in this fashion; and to the extent it is ambiguous, it is legally absurd to interpret it in the fashion the majority does here.   For that reason, we would affirm the court of appeals' unanimous holding that the relevant statutes "do[] not require a vehicle to have entered the intersection before causing the accident," *State v. Gordon*, 257 Ariz. 95, 97 ¶ 2 (App. 2024), and uphold Owen's conviction.

¶38        The enhanced criminal penalty statute applies if a motorist commits one of several enumerated moving violations "and the violation results in an accident causing serious physical injury or death to another person."   A.R.S. § 28-672(A).   The predicate statute at issue here is A.R.S. § 28-645(A)(3)(a), which provides in relevant part that "vehicular traffic facing a steady red signal alone shall stop before entering the intersection and shall remain standing until an indication to proceed is shown."

¶39        In interpreting statutes, if the point of the statute is obvious from its text, we are admonished to effectuate it as best we can with fidelity

15

to the text. This is referred to as the "presumption against ineffectiveness" canon, which instructs that "[a] textually permissible interpretation that furthers rather than obstructs the [statute]'s purpose should be favored." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 63 (2012) ("This canon follows inevitably from the facts that (1) interpretation always depends on context, (2) context always includes evident purpose, and (3) evident purpose always includes effectiveness."); *see also In re Chalmers*, 571 P.3d 885, 889 ¶ 18 (2025) (citing *State v. Serrato*, 568 P.3d 756, 760 ¶ 16 (2025)).

¶40 The majority essentially interprets § 28-645(A)(3)(a) in isolation as a red-light-running statute, so that if a vehicle manages to skid to a stop before entering the intersection on a light that has turned red, or slams into legally stopped vehicles that prevent it from entering the intersection, technically no violation has occurred. But once the statute is conjoined with § 28-672(A), the combination is clearly a safety measure, so that the language of § 28-645(A)(3)(a) must be read in the context of the two provisions together.

¶41 That is not to say, at all and to the contrary, that the second statute changes the meaning of the first, but rather that the meaning of both should be assessed through the lens—the context—of the overall object of the combined statutes. *Chalmers*, 571 P.3d at 889 ¶ 16 n.2 (setting forth *in pari materia* doctrine). Plainly, that object is to prevent serious or fatal injuries by requiring vehicles to stop before the intersection at a red light. As we explain below, the conclusion that there is no enhanced penalty where death is precipitated by an accident that initially occurs before the intersection and is continued through the intersection—that is, where the offending driver has not stopped for a red light before the intersection and death or serious injury occurs after the vehicles proceed through the intersection—is at best a hypertechnical one that defeats the statutes' clear purpose. Given that a plain-meaning approach would lead to a different result, we should favor that interpretation.

¶42 Construing § 28-645(A)(3)(a), the majority aptly observes that it requires "(1) a driver facing a red-light to 'stop'; (2) '*before entering* the intersection'; and (3) 'remain standing until an indication to proceed is shown.'" *Supra* ¶ 15 (emphasis in original). That is exactly right. It

should be clear that if these three elements are satisfied, as they are here, the statute is violated; and if that violation causes an accident that results in death or serious injury, an enhanced penalty accrues.

**¶43**　　　But the majority rewrites the statute to add a fourth element, holding that "the driver must enter the intersection to commit a violation." *Supra* ¶ 15.　Had the Legislature intended such meaning, it could have said "vehicular traffic may not enter an intersection on a red light," or words to that effect.　Had it done so, we would be obliged to enforce that language, whatever the consequence.　But it did not.

**¶44**　　　This added fourth element, in the majority's view, is the crucial element, concluding that "a red-light violation can only be committed once the vehicle enters an intersection." *Supra* ¶ 3.　Thus, the fact that "Gregory James Owen rear-ended a Jeep stopped at a red light, killing one of the Jeep's passengers," *supra* ¶ 1, does not, in the majority's view, amount to violating a statute instructing that on a red light, a driver "shall stop before entering the intersection." *Supra* ¶ 2 (citing § 28-645(A)(3)(a)).

**¶45**　　　In contrast to the majority, in our view, the statute's operative term is *stop*.　That is the actus reus of the violation.　In its three elements, the statute tells us what, where, and when.　The "when" is a solid red light. The "what" is to stop.　And the "where" is *before the intersection*.[13]　Under this plain reading, the entry of the vehicle into the intersection is not an implicit (much less dispositive) element of the crime, but merely proof positive that the crime was committed.　Indeed, by shearing off the antecedent "before" from "the intersection," the majority renders that crucial term devoid of meaning, which the majority aptly instructs is an inappropriate way to read a statute. *Supra* ¶ 16.

---

[13]　The majority correctly notes that a statute defines "intersection." *Supra* ¶ 15 (quoting A.R.S. § 28-601(8) (defining intersection as "the area embraced within the prolongation or connection of the lateral curb lines"). That is of no particular moment here, except to designate where a motorist must fail to stop (before entering it) in order for the requisite crime to be committed.

¶46        "Before the intersection" can be three inches, ten feet, thirty feet, or some other distance. That necessarily depends on whether vehicles are already stopped at the light.[14] *See Brogdon v. State*, 683 S.E.2d 99, 104 (Ga. App. 2009) (construing similar statutory language and concluding that "a reasonable reading of the statute requires that a driver facing a red traffic light stop behind the stop line or crosswalk and also behind those vehicles stopped in observance of the traffic light").[15] Even Owen's counsel conceded at oral argument that the proper place to stop at a red light is

---

[14] To support its contrary reading of the statute, the majority cites *Lemieux v. Superior Court*, 132 Ariz. 214 (1982). *Supra* ¶ 15. There the Court stated that "[t]he issue presented in this special action is if persons who have been previously hypnotized concerning the matters of the litigation will be permitted to testify at a civil trial." *Lemieux*, 132 Ariz. at 215. The Court's focus on that singular issue renders its brief summary of a prior version of § 28-645(A)(3)(a) the very definition of dictum.

[15] The majority criticizes the dissent for citing *Brogdon,* even though it is the most on-point case the parties cited, both in terms of an analogous statute and facts (although Brogdon, unlike Owen, eventually stopped before the intersection due to the chain reaction of stopped vehicles). The majority disavows *Brogdon* because it says that where the literal statutory language does not square with reason or intent, then the literal must yield. *Supra* ¶¶ 27–30. By contrast, this Court applies the plain meaning of statutory language rather than searching for legislative intent, *see State v. Tunkey*, 254 Ariz. 432, 438 ¶¶ 30–32 (2023) (Bolick, J., joined by Beene, Montgomery, and King, JJ., concurring), and we are glad that the entire Court here embraces that approach. This dissenting opinion is entirely textualist in its approach. Thus, though we too do not embrace the one portion of *Brogdon* on which the majority focuses, we agree with the *Brogdon* court that it engaged in "a reasonable reading of the statute," and we are presented with no equally on-point authority that reaches a contrary result.

behind a vehicle that has already stopped, which surely reflects common knowledge.[16]

¶47      Nor, as the majority concedes, is the fact that the accident was a continuous series of events significant.  We agree that the term "results in" suggests that the combination of the requisite moving violation and an accident triggers an enhanced penalty "regardless of whether the accident consists of a single event or a series of events."  *Supra* ¶ 20.  Given that concession, we are not sure how the majority can find no violation here even under its expansive reading of the statutory elements, given that Owen's vehicle did not come to an eventual stop until after the intersection.

¶48      Clearly, Owen failed to stop at the red light before the intersection.  Indeed, the municipal court, superior court, and court of appeals all agreed that Owen violated § 28-645(A)(3)(a).  As the trial court found, the Jeep's driver slowed her car to a stop when the light turned red.  By contrast, Owen made a fatal miscalculation about being able to beat the light.  Owen plowed his motorhome into the Jeep at more than thirty miles per hour.  Both vehicles then hurtled through the intersection, leading ultimately to the Jeep passenger's death.  By the statute's plain language, the fact that the catastrophe began a car's length before the intersection does not absolve Owen of the enhanced penalty.

¶49      Indeed, the majority unpersuasively suggests an "accident" connotes a split-second (or split-millisecond) moment of impact.  *See supra* ¶¶ 1, 20–22.  That would be a "collision," which is not the term used in the statute.  Accidents, by contrast, are often unfolding events, such as a chain-reaction crash.  *See Gordon*, 257 Ariz. at 99 ¶¶ 14–15 (collecting case law and dictionary definitions to that effect).  Here, as the trial court found, the vehicles traveled in tandem after the initial collision through the

---

[16]  Owen's counsel indicated, and the majority here asserts, *supra* ¶ 32, that Owen might have violated a different statute, such as excessive speed or following too closely.  Perhaps so.  But Owen may well have violated multiple laws.  Under a correct interpretation of § 28-645(A)(3)(a), he is guilty of failing to stop before the intersection on a red light, which makes him eligible for an enhanced criminal penalty under § 28-672(A).  That is what the State charged and proved.

intersection until they came to a stop on the other side of the intersection. Surely this type of accident is encompassed within the scope of the statutes.

¶50 Similarly, the majority excises from § 28-645(A)(3)(a) the passage "and shall remain standing until an indication to proceed has been shown." How does a vehicle "remain standing" if the statutory command is violated only upon entering the intersection? This Court has repeatedly held that we disfavor statutory readings that render words superfluous. *Chalmers*, 571 P.3d at 889 ¶ 18 (citing *Serrato*, 568 P.3d at 760 ¶ 16). Read as a whole, the statute requires vehicles to stop before entering the intersection and remain standing before the light turns green. Owen failed to heed that requirement.

¶51 Nor does the causation requirement in the enhanced penalty statute change the result. Owen's violation of § 28-645(A)(3)(a)—his failure to stop at the red light before the intersection—was clearly the but-for cause of the accident that killed the Jeep's passenger. *See supra* ¶ 20. No independent or intervening circumstances or factors affected the outcome. *Causation*, Black's Law Dictionary (12th ed. 2024) ("The causing or producing of an effect.").

¶52 The majority resorts to statutory interpretation rules to guide its analysis. *Supra* ¶ 13. Specifically, it cites A.R.S. § 13-104, which instructs that penal statutes "must be construed according to the fair meaning of their terms and to promote justice and effect the objects of the law, including the purposes stated in § 13-101." That statute in turn states that one purpose is to "give fair warning of the nature of the conduct proscribed." A.R.S. § 13-101(2).

¶53 But fair warning of what? The statutes on their face give fair warning that a driver who fails to stop before an intersection on a red light and causes death or serious injury will be held to account. The obvious point of the statute is to prevent harm for failing to stop. It is not apparent what warning is omitted from, and what unfair prejudice is inflicted upon, a person who fails to stop for a red light before the intersection and in the process strikes a lawfully stopped vehicle and causes death or serious injury. Such a plain reading, it seems to us, promotes justice and effects the objects of the law.

20

¶54          The majority overlooks at least four other purposes stated by § 13-101, all of which, in our view, are served by the plain meaning of the statute: "To proscribe conduct that unjustifiably and inexcusably causes or threatens substantial harm to individual or public interests" (§ 101(1)); "To differentiate on reasonable grounds between serious and minor offenses and to prescribe proportionate penalties for each" (§ 101(4)); "To insure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized" (§ 101(5)); and "To impose just and deserved punishment on those whose conduct threatens the public peace" (§ 101(6)).    A reading of the statute that absolves Owen of full accountability for his actions fails all those objectives.

¶55          Moreover, the Constitution guarantees victims the right to justice and due process.    Ariz. Const. art. 2, § 2.1(A).    As Owen was charged under the enhanced penalty statute, decedent's family acquired victim status.    *See State v. Patel*, 251 Ariz. 131, 133 ¶ 3 (2021); *State v. Hamilton*, 249 Ariz. 303, 306 ¶ 6 (App. 2020).    The enhanced penalty statute also provides for victim restitution.    A.R.S. § 28-672(G).    Of course, the right to restitution evaporates under the majority's reading of the statute.

¶56          In that regard, it is the Jeep's driver who did not have fair warning of the statute's scope, as altered by the majority here.    Had she seen Owen's motorhome barreling toward the stopped Jeep in her rear-view mirror, and tried to avoid an accident by entering the intersection against the red light with the exact same result (an accident leading to the passenger's death), perversely she would have preserved the family's restitution rights, because then, in the majority's view, Owen would have committed the predicate crime leading to the enhanced penalty.

¶57          But only if she was able to move the *entire* vehicle into the intersection before the crash.    Had an inch of the rear bumper not yet entered the intersection, then in the majority's eyes the accident would have occurred before the intersection and Owen would not have violated § 28-645(A)(3)(a).    Why would the Legislature possibly have enacted a law to penalize the first result but not the second?    Indeed, it would seem logical that plowing into a car stopped for a red light would constitute a *worse* infraction than entering the intersection on a red light, because (1) the driver seeing a stopped car would be on notice that the light was red or

changing to red (here, it was red); and (2) hitting a stopped car waiting for the red light to change would definitely, not merely probably, cause serious damage. It is inconceivable that the Legislature would assign an enhanced penalty to a driver that hurtled into an intersection on a red light, thereby causing death or serious injury, but absolve a driver who did exactly that while simultaneously propelling through the intersection a vehicle that was stopped for the red light.

¶58 Which leads to our final argument. It is difficult to clear the threshold into legal absurdity, but as illustrated by the foregoing example, the statute as the majority construes it does so. "A result is absurd if it is so irrational, unnatural, or inconvenient that it cannot be supposed to have been within the intention of persons with ordinary intelligence and discretion." *State v. Estrada*, 201 Ariz. 247, 251 ¶ 17 (2001) (quoting *Perini Land Dev. Co. v. Pima County*, 170 Ariz. 380, 383 (1992)) (internal quotation marks omitted). The cited case in turn provides that "[i]f enforcing the clear language of the constitution results in an absurd situation, the [C]ourt may look behind the bare words of the provision to discern its intended effect." *Perini*, 170 Ariz. at 383. If two plausible statutory interpretations exist, the Court should choose the one that makes sense. *See* Scalia & Garner, at 234 ("Some absurd outcomes can be avoided without doing real violence to the text."). Our colleagues obviously believe their statutory interpretation is correct; but if they think "before entering the intersection" can plausibly mean a command to stop at a red light before the intersection, they should interpret it in that manner to avoid an absurd and manifestly unjust result.

¶59 Surely after this case the Legislature can, if it wishes, further clarify what we consider an already clear statute. But even if it does, it will be cold comfort to the victim family, which in our view was clearly within the intended protective scope of the enhanced penalty statute.

¶60 For all the foregoing reasons, and with great respect to our colleagues, we dissent.